**Jeffrey S. SCHULTZ, Plaintiff,**

v.

**Dave AMICK, Todd C. Traum, Mark Pennings, Steven Saunders, Gary Moore, Woodbury County, Iowa, Gary Maas, Dave Jensen, and City of Sioux City, Iowa, Defendants.**

**No. C 94–4062–MWB.**

United States District Court,
For the Northern District of Iowa, Western Division.

Feb. 13, 1997.

William L. Kutmus and Mark S. Pennington of Kutmus & Pennington, P.C., Des Moines, IA, for plaintiff Jeffrey S. Schultz.

Douglas L. Phillips of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, IA, for Defendant Todd C. Traum.

MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT TRAUM'S MOTION FOR NEW TRIAL AND PLAINTIFF'S APPLICATION FOR FEES AND COSTS

## TABLE OF CONTENTS

I. BACKGROUND .................................................... 1092
II. LEGAL ANALYSIS ................................................ 1093
 A. Motion For New Trial ...................................... 1093
 1. Standards for a new trial ............................ 1093
 2. Sufficiency of the evidence .......................... 1093
 3. Improper jury instruction ........................... 1095
 4. Improper interjection of the judge into the proceedings .............. 1097
 a. Judicial deportment ............................. 1097
 b. Combative atmosphere ........................... 1098
 c. Judicial intervention ........................... 1101
 5. Improper evidentiary rulings ....................... 1105
 a. Testimony of plaintiff's expert ................. 1105
 b. Post-incident language and behavior ............ 1106
 c. Valium ......................................... 1106
 d. Pre-incident arrests and incarceration ......... 1106
 e. Circumstances of Schultz's arrest .............. 1107
 f. The medical records ............................ 1107
 6. Summary ............................................ 1108
 B. Application For Fees And Costs ........................... 1108
 1. Authority for and purpose of fee awards ............. 1108
 2. "Prevailing party" .................................. 1109
 3. Calculation ........................................ 1110
 a. Partial success ................................ 1111
 b. Excessive hourly rate ........................... 1113
 c. Hours not reasonably expended .................. 1114
 4. Costs .............................................. 1116
 5. Summary ............................................ 1116
III. CONCLUSION .................................................. 1117

BENNETT, District Judge.

In this "excessive force" case brought by an arrestee pursuant to 42 U.S.C. § 1983, the only defendant found liable, a county corrections officer, has moved for a new trial on the grounds that the trial judge improperly interjected himself into the proceedings, the jury's verdict is not supported by the weight of the evidence, the trial court committed errors of law in jury instructions, and the trial court's evidentiary rulings improperly purged the record of evidence negative to the

plaintiff's case while permitting improper expert testimony, thus substantially affecting the defendant's right to a fair trial. The plaintiff resists the motion for a new trial on every ground. The plaintiff has also moved for an award of fees and costs as a prevailing party in the litigation. The defendant held liable resists the fee application on the ground that it is excessive in terms of hours spent, hourly rate claimed, and the plaintiff's limited success against only one of several defendants on only one of several claims. The senior judge who tried the case has recused himself, and these matters have therefore been reassigned to this district judge.

## I. BACKGROUND

Plaintiff Jeffrey S. Schultz filed this lawsuit on July 29, 1994, alleging both federal and state claims arising from an incident during his intake at the Woodbury County Jail after his arrest on August 13, 1993. Schultz alleged that, while shackled, he was grabbed in a headlock, attacked by several jail officers, and dropped to the floor. As the result of this incident, Schultz alleged that he suffered a broken jaw and loosened or broken teeth. The incident was recorded on videotape, with audio, and the tape was introduced into evidence at the trial. Schultz named as defendants in his lawsuit Dave Amick, the Sheriff of Woodbury County; Todd C. Traum, Mark Pennings, Steven Saunders, and Gary Moore, all corrections officers in the Woodbury County Sheriff's Office; Woodbury County; Gary Maas, the Chief of Police of the City of Sioux City; Dave Jensen, a Sioux City police officer; and the City of Sioux City. Schultz's federal claims, brought pursuant to 42 U.S.C. §§ 1983 and 1985, alleged deprivation of Schultz's constitutional rights and conspiracy to deprive him of his constitutional rights premised on use of excessive force. Schultz's state common-law claims alleged assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, "negligence," "recklessness," and "respondeat superior."

Jensen, Maas, and the City of Sioux City were dismissed from the lawsuit on their motion for summary judgment on the ground that these defendants had no duty to intervene in the altercation Schultz alleged caused his injuries. Before trial, Schultz abandoned his claims against defendants Woodbury County and Dave Amick, as well as his statutory conspiracy and common law tort claims. Only the § 1983 "excessive force" claim remained for trial.

The case, which was tried to a jury, began on April 2, 1996, and was presided over by a senior judge of this district. Prior to and during the trial, the court made various evidentiary rulings that are challenged here and also promulgated jury instructions, one of which is challenged here. In addition, the court made comments or took actions in the case, in chambers and in open court during trial, that Traum asserts entitle him to a new trial. Traum contends that comments made by the trial judge to counsel after the trial indicate the pervasiveness of the trial judge's bias against defendants and their counsel before and during the trial.

On April 5, 1996, the parties rested and the matter was submitted to the jury. After approximately seven or eight hours of deliberation, the jury returned a verdict in favor of Schultz against defendant Traum. However, the jury found in favor of the remaining defendants. The jury awarded damages against Traum in the amount of approximately $64,700.

On April 15, 1996, Traum moved for a new trial and also moved for the trial judge to recuse himself. The parties each filed initial briefs on these motions. On June 20, 1996, Schultz filed a claim for approximately $115,000 in fees and expenses as a "prevailing party" in the litigation. Traum subsequently resisted that motion. On August 23, 1996, the judge who had presided at trial recused himself. The pending motions were then reassigned to me. After the case was reassigned, because this judge had not presided at the trial, the court held a status conference on the preparation of a transcript and established an extended briefing schedule to allow the parties to supplement their briefs on the motion for new trial with excerpts from the trial transcript. Those supplemental briefs were subsequently filed by each

party, and the court held a hearing on Traum's motion for new trial and Schultz's application for fees and costs on January 28, 1997.

At the hearing on January 28, 1997, as at trial, plaintiff Jeffrey S. Schultz was represented by counsel William L. Kutmus and Mark S. Pennington of Kutmus & Pennington, P.C., in Des Moines, Iowa. Defendant Todd C. Traum, the movant for new trial, was represented by the same counsel who had represented all defendants at trial, Douglas L. Phillips of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., of Sioux City, Iowa.

## II. LEGAL ANALYSIS

### A. Motion For New Trial

At oral arguments on the pending motions, counsel for Traum characterized the motion for new trial as asserting two principal grounds for relief: First, that the central liability instruction was legally erroneous, because it allowed the jury to find a constitutional violation premised on mere negligence; and second, that the trial was fundamentally unfair, because of prejudicial evidentiary rulings and the improper participation of the judge. However, the written moving papers and briefs also assert a third ground for relief, which is that the verdict is against the substantial weight of the evidence. The court will consider this last ground first, then consider the other two grounds, which involve a variety of subissues, *seriatim*.

### 1. Standards for a new trial

Federal Rule of Civil Procedure 59, entitled "New Trials; Amendment of Judgments," states in relevant part:

(a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed.R.Civ.P. 59(a). The authority to grant a new trial is within the discretion of the district court. *Gray v. Bicknell*, 86 F.3d 1472, 1480–81 (8th Cir.1996). Thus, the district

court's denial of a motion for new trial is reviewed for abuse of discretion. *Dole v. USA Waste Servs., Inc.*, 100 F.3d 1384, 1387 (8th Cir.1996); *Gray*, 86 F.3d at 1480–81; *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir.1995) ("We have made clear that district courts enjoy broad discretion in choosing whether to grant a new trial, and thus, we accord great deference to their Rule 59 rulings," and noting further that denial of a motion for new trial may be reversed where the district court's judgment rests on an erroneous legal standard or where the verdict is against the weight of the evidence).

The Eighth Circuit Court of Appeals recently observed that "Federal Rule of Civil Procedure 59 confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Gray*, 86 F.3d at 1480. More specifically,

[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice. *White v. Pence*, 961 F.2d 776, 780 (8th Cir.1992); *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

*Gray*, 86 F.3d at 1480. Traum asserts that a new trial is appropriate on the basis of a verdict against the weight of the evidence and other legal errors resulting in a miscarriage of justice.

### 2. Sufficiency of the evidence

One of Traum's grounds for a new trial is that the jury's verdict is against the weight of the evidence. Regarding motions for new trial based on weight of the evidence, the court in *White v. Pence*, 961 F.2d 776 (8th Cir.1992), observed:

With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial

even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted). Similar language appears in *Brown [v. Syntex Laboratories, Inc.]*, 755 F.2d [668] at 671–73 [(8th Cir. 1985)]; *Slatton [v. Martin K. Eby Constr. Co., Inc.]*, 506 F.2d [505,] 508 n. 4 [(8th Cir.1974), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975)]; *Bates [v. Hensley]*, 414 F.2d [1006,] 1011 [(8th Cir.1969)], and early authority cited in *Bates. See also Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1266 (8th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987).

*Id.* at 780. Thus, the court in *Pence* concluded the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. *Id.; see also Shaffer v. Wilkes*, 65 F.3d 115, 117 (8th Cir.1995) (citing *Pence* for this standard); *Rush v. Smith*, 45 F.3d 1197, 1203 (8th Cir.) (also citing *Pence* for this standard), *cert. denied*, —— U.S. ——, 116 S.Ct. 409, 133 L.Ed.2d 328 (1995); *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 800 (8th Cir. 1994) ("[A] motion for a new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice."); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir.) (correct standard for new trial is conclusion that "the [jury's] verdict was against the 'great weight' of the evidence, so that granting a new trial would prevent a miscarriage of justice."), *cert. denied*, 513 U.S. 989, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994).[1] Furthermore,

where the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence, and where the district court balances and weighs the evidence based on the proper legal standards, [*White*, 961 F.2d at 781], the court's denial of a Rule 59 motion is virtually unassailable, *Keenan v. Computer Associates International, Inc.*, 13 F.3d 1266, 1269 (8th Cir.1994). In such cases, we reverse for a clear abuse of discretion only where there is an "absolute absence of evidence" to support the jury's verdict. *Gopher Oil Co. v. Union Oil Co. of California*, 955 F.2d 519, 526 (8th Cir. 1992).

*Pulla*, 72 F.3d at 656–57; *see also Bunting v. Sea Ray, Inc.*, 99 F.3d 887, 890 (8th Cir.1996) (also stating that denial of a motion for a new trial on grounds that the jury's verdict is against the weight of the evidence is "'virtually unassailable on appeal,'" quoting *Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir.1990), in turn quoting *Grogg v. Missouri Pac. R.R.*, 841 F.2d 210, 214 (8th Cir.1988)).

This court has reviewed the evidence submitted at trial, not just the videotape of the incident giving rise to Schultz's claims, but the trial transcript, and concludes that there is far from an "absolute absence of evidence" to support the jury's verdict. *Pulla*, 72 F.3d at 656–57; *Gopher Oil Co.*, 955 F.2d at 526. Applying the applicable standard of liability in excessive force cases, as formulated, for example, in Eighth Circuit Model Civil Jury Instructions 4.10 and 4.20, this court cannot find that the jury's verdict is against the weight of the evidence submitted or that its verdict on the evidence submitted is a miscarriage of justice. *Pence*, 961

---

1. Rule 59(a) specifically provides for the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States," Fed. R.Civ.P. 59(a), and the court does not mean to suggest that a verdict against the great weight of the evidence is the only ground for a new trial in a civil action. In addition to the grounds considered in this case, there may be other grounds for granting a new trial. *See, e.g., Dole v. USA Waste Servs., Inc.*, 100 F.3d 1384, 1388 (8th Cir.1996) ("Misconduct of counsel may be so prejudicial as to require a new trial."); *Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 397 (8th Cir.1994) (new trial may be granted on the basis

of a question by counsel that places prejudicial information before the jury, citing *Sanders-El v. Wencewicz*, 987 F.2d 483, 484 (8th Cir.1993), and *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 188 (8th Cir.1987)); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 385 (8th Cir.1992) (misconduct of counsel may be grounds for new trial, but the court must judge whether there has been an effect on the substantive rights of the parties, or whether the misconduct created undue prejudice or passion tainting the proceedings, particularly in light of whether the district court concludes that an effective curative instruction has been given).

F.2d at 780. Traum is not entitled to a new trial on this ground.

### 3. Improper jury instruction

Another ground for granting a new trial, and one that is also asserted here, can be improper instructions to the jury where those improper instructions cause material prejudice. *Gray*, 86 F.3d at 1485; *Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 114 (8th Cir.1993) (an improper jury instruction or failure to comply with Rule 51 may be a ground for a new trial, but only if the moving party can show material prejudice). When confronted with an argument for a new trial based on improper jury instructions, the Eighth Circuit Court of Appeals recently stated the following:

> The district court has broad discretion to instruct the jury in the form and language it considers fair and adequate to present the substantive law. *Grogan v. Garner*, 806 F.2d 829, 836 (8th Cir.1986); *James E. Brady & Co., Inc. v. Eno*, 992 F.2d 864, 868 (8th Cir.1993). A party is entitled to an instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it. *Bursch v. Beardsley & Piper*, 971 F.2d 108, 112 (8th Cir.1992). A party is not, however, entitled to a specific formulation of an instruction. *United States v. Ribaste*, 905 F.2d 1140, 1143 (8th Cir.1990).
>
> In reviewing the district court's instructions, we consider whether the charges, taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury. *Jones v. Board of Police Comm'rs*, 844 F.2d 500, 504 (8th Cir.1988), cert. denied, 490 U.S. 1092, 109 S.Ct. 2434,

104 L.Ed.2d 990 (1989). We will not reverse absent harmful error. There is no harmful error if the charge, in general, correctly instructs the jury, even if one portion is technically incorrect. *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330, 335 (8th Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 688 (1987). " 'The test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.' " *Id.* (quoting *Houston v. Herring*, 562 F.2d 347, 349 (5th Cir.1977) (per curiam)).

*Gray*, 86 F.3d at 1485; *Bening v. Muegler*, 67 F.3d 691, 695 (8th Cir.1995).[2]

Traum's objection focuses on the first element of the liability instruction in this excessive force case, Instruction No. 9. The pertinent portion of the instruction is as follows:

> *One* the defendants and the plaintiff were involved in an altercation wherein force was used thereby creating a situation where the plaintiff, while in the physical control of the defendants, either fell or was dropped to the ground....

Instruction No. 9. Traum's specific objection is to the inclusion of the words "either fell or," which he asserts allowed the jury to find liability on the basis of mere negligence. Traum contends that the plaintiff would only have fallen if someone lost his hold inadvertently. Traum asserts that the jury should have been required to find that Schultz "was dropped" in order to find that the force used was excessive. Apparently, Traum's argument is that a finding that Schultz "was dropped" would show intentional conduct

---

**2.** In *Bening*, the Eighth Circuit Court of Appeals distinguished between the review afforded posttrial objections to jury instructions when no objection is made at the time, and review when objections were made:

> When a specific objection is not made before an instruction is given, we review only for plain error. *Hughes v. Box*, 814 F.2d 498, 502–03 (8th Cir.1987); *see also* Fed.R.Civ.P. 51. When a specific objection is made, however, the instructions as a whole are reviewed to insure that they fairly and adequately state the substantive law on the issue raised. *American*

*Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1139 (8th Cir.1986). If the objecting party can also demonstrate that it was prejudiced, a new trial is necessary. *See Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 113–14 (8th Cir.1993).

*Bening*, 67 F.3d at 696. In this case, the record makes it abundantly clear that Traum objected to the pertinent portions of the jury instructions at the time. Thus, the applicable review of instructions is to consider them as a whole to determine whether they fairly state the substantive law and cause no prejudice to the movant.

upon which liability could be founded, not merely inadvertence or negligence.

■ Traum is correct that liability in a § 1983 "excessive force" action cannot be founded on mere negligence. *See, e.g., Daniels v. Williams,* 474 U.S. 327, 335–36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986) (a negligence claim does not support a § 1983 action); *Estes v. Moore,* 993 F.2d 161, 163–64 (8th Cir.1993) (evidence of negligence is properly excluded in a § 1983 action alleging excessive force, because such an action is not a tort action in which negligence is sufficient for liability); *Roach v. City of Fredericktown, Mo.,* 882 F.2d 294, 297 (8th Cir.1989) (an excessive force claim under § 1983 could not be supported by negligent or grossly negligent conduct, as such conduct does not "rise to the level of conduct that would be actionable under § 1983"); *accord Ansley v. Heinrich,* 925 F.2d 1339, 1344 (11th Cir.1991) (holding that a district court did not err when it charged a jury in a Fourth Amendment excessive force case that "negligence, standing alone, is not a constitutional violation"). However, this court is by no means convinced that, applying the appropriate standard to review of this jury instruction, the instruction improperly allowed the jury to find liability in a § 1983 action on the basis of negligence.

First, taken in isolation, this court sees no difference in inferences of either negligence or intentional conduct between "fell" and "was dropped." "Dropping" something or someone can just as easily be the product of mere negligence or inadvertence as can causing someone or something to "fall." By contrast, "was thrown to the ground" would more likely suggest intentional conduct.

However, the question of the propriety of a jury instruction is not the inference to be drawn from one word or phrase in isolation, but "whether the charges, taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury." *Gray,* 86 F.3d at 1485; *Bening,* 67 F.3d at 696. Here, the entire statement of this element of the claim is that "the defendants and the plaintiff were involved in an altercation wherein force was used thereby creating a

situation where the plaintiff, while in the physical control of the defendants," ended up on the ground. Instruction No. 9. This statement, taken as a whole, though perhaps not "faultless," adequately conveyed to the jury that the plaintiff ended up on the ground *as the result of use of force* by the defendants, not defendants' mere inadvertence or negligence, while the plaintiff was in defendants' physical control. *Gray,* 86 F.3d at 1485; *Bening,* 67 F.3d at 696. It identifies the situation in which the falling or dropping occurred as one in which force was used by the defendants and states further that the use of force by the defendants "created the situation" in which Schultz fell or was dropped. Taken as a whole, and in light of the evidence that force was being used upon Schultz by the defendants, and in light of the applicable law, the instruction was adequate. *Gray,* 86 F.3d at 1485; *Bening,* 67 F.3d at 696. Traum's motion for new trial on the basis of objections to this portion of Instruction No. 9 will therefore be denied.

Next, Traum asserts that the trial court employed a "shifting sands" approach to the law of the case by first holding that evidence of the defendants' subjective beliefs would not be admissible, and that the liability instruction would be essentially Eighth Circuit Model Civil Instruction 4.10, but then instructing the jury using a modified version of Model 4.20. The gist of this argument is that Model 4.10 focuses on what a reasonable officer would have done on the scene, while Model 4.20 focuses instead on the purpose behind the defendants' actions, *i.e.,* as Traum perceives it, upon the defendants' subjective beliefs about the situation. Once defendants' case was concluded without evidence of the defendants' subjective beliefs, in compliance with the court's ruling, however, the court agreed to use Model 4.20, which Traum contends precluded him from offering evidence of subjective beliefs even though the jury was ultimately instructed it could consider them.

Traum does not argue that the instruction based on Model 4.20 was legally improper; indeed, he could not do so, because the defendants originally proffered that instruc-

tion.[3] Therefore, the assertion here is not legal error in the instructions, but whether the trial court's conduct in selecting the appropriate instruction was prejudicial to Traum's opportunity to get a fair trial of the case. That assertion will be considered below.

### 4. Improper interjection of the judge into the proceedings

The ground for a new trial upon which Traum appears to lay the most emphasis is the excessive intervention of the trial judge into the proceedings. Traum objects to conduct of the trial judge that he asserts prejudiced his case. That conduct involves both comments to counsel before, during, and after the trial that Traum asserts indicate the trial judge's bias against the defendants and their counsel, and conduct, both in chambers and in front of the jury, that Traum contends conveyed the trial judge's bias to the jury or otherwise prejudiced his case.

### a. Judicial deportment

The Eighth Circuit Court of Appeals has repeatedly stated that "[a] trial judge has the duty to maintain an atmosphere free from prejudicial comment." *Bunting*, 99 F.3d at 890 (citing *Rush v. Smith*, 56 F.3d 918, 921 (8th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 409, 133 L.Ed.2d 328 (1995)). In *Rush*, the court opined that a prejudicial comment from the bench is worse than all others, "because it has the air of official sanction." *Rush*, 56 F.3d at 921.

> For this reason, courts have long recognized that judges must be especially careful when making comments before a jury. "A trial judge must be especially cautious and circumspect in language and conduct during a jury trial. The judge must be fair to all parties and not do or say anything that might prejudice either litigant in the eyes of the jury." *Coast–to–Coast Stores v. Womack–Bowers*, 818 F.2d 1398, 1401 (8th Cir.1987). This admonition reflects the vital role that the trial judge plays in a jury trial. More than a century

ago, the Supreme Court explained the need for an exacting standard of judicial conduct: "It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his [or her] lightest word or intimation is received with deference, and may prove controlling." *Starr v. United States*, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894). More recently, the Fifth Circuit reiterated this need for exemplary comportment: "By reason of his [or her] role, quickly observed by jurors, the judge is a figure of over-powering influence, whose every change in facial expression is noted, and whose every word is received attentively and acted upon with alacrity and without question." *Travelers Ins. Co. v. Ryan*, 416 F.2d 362, 364 (5th Cir.1969). *Rush*, 56 F.3d at 921–22. A new trial is appropriate when a trial judge's conduct in the case does not meet these "appropriately high standards." *Id.* at 922.

In *Rush*, the court also cautioned that,

> [W]hen faced with an allegation of judicial misconduct, "[a]n appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage [a party] in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." *La Barge Water Well Supply Co. v. United States*, 325 F.2d 798, 802 (8th Cir.1963) (Blackmum, J.), *citing Goldstein v. United States*, 63 F.2d 609, 613 (8th Cir.1933).

*Rush*, 56 F.3d at 922. The court then distinguished between judicial intervention in the questioning of witnesses and comments that appeal to bias or prejudice. *Id.* The former kind of comments may possibly benefit the truth-seeking function of the courts without revealing the judge's views on the case, even though excessive interjections are not favored. *Id.* The court could find no such possible salutary benefits from the former kind of comments, that is, comments by the

---

**3.** Thus, this court need not consider whether Model 4.10 or Model 4.20 was appropriate in the circumstances of the case.

court that appealed to bias or prejudice. *Id.* One such comment, the court found, could destroy the integrity of the proceedings. *Id.* The court therefore found a new trial was appropriate in light of a trial judge's racially polarizing remarks. *Id.* at 923.

Traum has not asserted that the court made openly biased or prejudicial comments before the jury that would fall into this latter classification. He has, however, asserted that a combative atmosphere between the bench and defense counsel was apparent and that the court made comments of the former kind, which improperly interjected the trial judge into the proceedings beyond any truth-seeking function.

### b. Combative atmosphere

Several decisions of the Eighth Circuit Court of Appeals focus more particularly on judicial intervention in the proceedings, rather than upon improper comments. In *United States v. Jackson,* 29 F.3d 397 (8th Cir. 1994), the court considered allegations, similar to those asserted by Traum, that the trial court created a combative atmosphere or atmosphere of hostility towards counsel for one party. The hostility arose primarily from conflicts over introduction of evidence and the handling of objections. *Jackson,* 29 F.3d at 401–02.[4] The court found that the confrontations had been fewer and less severe than those in *United States v. Turner,* 975 F.2d 490, 493 (8th Cir.1992), *cert. denied sub nom. Dowdy v. United States,* 506 U.S. 1082, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993), in which the court had issued four contempt citations to counsel for confrontations with the judge. *Jackson,* 29 F.3d at 401. Additionally, the court found that in the case before it,

> [the judge] did not try the Government's case or improperly interject himself into

the trial proceedings. While the district court may have used sharp language in rejecting some of attorney Gibson's objections, the court's rulings in most of the questioned instances fell within the court's discretion under the Federal Rules of Evidence. *See United States v. Lueth,* 807 F.2d 719, 729 (8th Cir.1986). Further, the court's rulings on substance did not amount to plain error.

> We also note that a majority of the disputes between counsel and the court occurred outside of the jury's hearing. Moreover, the judge specially instructed the jury during the course of the trial, after the tenor of the interactions apparently had escalated, that his comments and any disputes between counsel and the court did not reflect on the guilt or innocence of the parties and could not be so considered by the jury. *See ante,* at 400–401 n. 4. We cannot say on this record that Donaldson was deprived of a fair trial. *United States v. Scott,* 26 F.3d 1458, 1465 (8th Cir.1994), [*cert. denied sub nom. Richard v. United States,* 513 U.S. 1019, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994) ]. Accordingly, Donaldson's claim [of grounds for reversal of conviction] must fail.

*Jackson,* 29 F.3d at 401–02.

The claim of a pervasively hostile or combative environment in this case is based, in part, on comments of the trial judge made in chambers to defense counsel the Monday following the return of the verdict in this case when counsel was meeting with the judge prior to jury selection in another case. Those comments were tape-recorded by the trial judge as a matter of routine and defense counsel subsequently obtained a copy of the tape and provided in his motion for new trial the transcription that appears in the margin.[5]

---

4. The events the appellate court found generated the confrontational or combative environment in *Jackson* were the following: "[B]oth the Assistant U.S. Attorney and Donaldson's counsel made nitpicking objections; many of Mr. Gibson's objections were general—leading, improper form of the question, relevancy—and were addressed to preliminary matters which in no way involved disputed facts or facts material to the disposition of the case; Mr. Gibson frequently made statements rather than asked questions ... which the district court repeatedly admonished

counsel not to do, and Mr. Gibson's continuation of this procedure aroused the ire of the court; a similar form of cross-examination by the prosecutor, which Mr. Gibson, unlike the Government, did not object to at the time, did not evoke the same irritation from the bench." *Jackson,* 29 F.3d at 401.

5. The transcription of the judge's comments provided by defense counsel is as follows:

 I think last week you thought you were getting picked on and maybe you were a little bit,

Traum contends that the attitude expressed by the trial judge in this "unsolicited lecture," including what Traum contends is a suggestion that the defendants were liars who conspired to make their story match what appeared on the videotape of the incident, and the trial judge's suggestion that there was no room for disagreement about what happened, tainted the case from the start. Defendant's Supplemental Brief In Support Of Motion For New Trial, pp. 4–5 & n. 4.

■ However, this court finds no ground for a new trial based on the fact that the judge, after the verdict was in, had strong feelings about the proper result in the case. The trial judge's speculation about what would or wouldn't have been the testimony of the officers had the videotape of the incident not been in evidence is just that, speculation. A more telling issue is whether the views expressed by the trial judge after the trial were in fact held prior to or during trial, and, more to the point still, whether those views were conveyed to the jury or otherwise infected the trial of the case. Those concerns are addressed in this court's reexamination of evidentiary rulings and, just below, in consideration of particular incidents that Traum alleges exemplify the hostile or combative atmosphere that prevailed.

During the trial, when defense counsel was cross-examining plaintiff's expert witness, the court, without an objection from plaintiff's counsel, interrupted defense counsel for a sidebar. Trial Transcript, Vol. I, p. 136.

In the sidebar, the court lectured defense counsel on the proper way to use a deposition in cross-examination. Trial Transcript, Vol. I, pp. 136–37. Then, in open court, the following transpired:

Q (BY DEFENSE COUNSEL): Did you tell me when I took your deposition—

THE COURT: He doesn't remember that, and that's not the way to do it. Ask him the question, and then find out—if he gives you the same answer, fine. If he doesn't, then you read from his deposition. Nobody is expected to memorize their deposition.

Trial Transcript, Vol. I, p. 137.

The sidebar conference, although it was unsolicited by an objection from plaintiff's counsel, and although it may indicate the trial judge's irritation with defense counsel for not following the mechanics just discussed for use of a deposition, was outside the hearing of the jury. *Jackson,* 29 F.3d at 401–02. The comment made in front of the jury, although it may have expressed the trial court's irritation or impatience with counsel, did not reflect on the question of whether the defendants had violated the plaintiff's civil rights and could not be so considered by the jury. *Id.* The trial judge may take an active role in conducting the trial, *Czajka v. Black,* 901 F.2d 1484, 1486 (8th Cir.1990), which certainly extends to such matters as instructing counsel on the proper method for using a deposition in his court. Also, neither this nor any other epi-

although I hope not, but that's a kind of a gross situation. I realize you and your expert gotta look at that in the best light, but I come pretty damn close to asking the U.S. Attorney to charge those guys with civil rights criminal violations. I might yet. That's gross, and you can put all the spin on it you want, but when you try to tell me that when the guy is down, they got his head, they got his hands behind his back, he's got one leg on the floor so he can [sic] kick, and then somehow he kicks, so his leg is up here, and that's that wild kick that they're all so afraid of. It's absolutely impossible, unless somebody knocks his other leg out. I don't care who you are. Mr. Phillips, you can't get your leg up there; you can't make it come up like that one did, and I tell you that only because this week you don't have a crappy case. I don't know what kind of case you got, but you ain't got one that's that crappy,

and you might get a new trial out of this or something; I probably shouldn't be talking, but the point is, those guys, if there wasn't any videotape, I really would hate to hear what story those guys had. We had—the last time we had a videotape, the officers—the defendants didn't know it. Were you in that case? They all told bald-faced lies. Finney was here, the law clerk. He wanted to get them all indicted. I finally said I don't think we need to get three policemen indicted for perjury in federal court, but after they all told their lies, then the videotape came out, just exactly the opposite of what they said, so I think that Sioux City, Woodbury County police aren't any better than the guys who'd beaten those Mexicans out on the road and they aren't any better than Rodney King's guys, and if your clients and you don't think so, you've been trying too many of these cases. God bless you.

sode escalated to the point where the court imposed contempt sanctions. *Turner,* 975 F.2d at 493.

■ Traum asserts that the hostile atmosphere extended to witnesses for the defendants. He contends that when plaintiff's counsel and defendants' expert exchanged cross words during cross-examination, the court cautioned the defense witness, not plaintiff's counsel. Trial Transcript, Vol. III, p. 599, lines 1–23.[6] This court, however, is convinced that the witness's conduct was out of line and the reproof from the trial judge was certainly justified. The trial court has the authority to take an active role in the conduct of the trial. *Czajka,* 901 F.2d at 1486. Nor could the court's reproof of the witness in any way be taken as a comment on the witness's veracity or the weight to be given his testimony. *Cf. Jackson,* 29 F.3d at 401–02 (a comment that did not reflect on the question of guilt or innocence and that could not be so considered by the jury did not establish a right to a reversal of a conviction). Counsel for defendants did not object to the plaintiff's counsel's questioning as badgering or otherwise inappropriate, and this judge's review of the record indicates that plaintiff's counsel had done nothing improper in questioning defendants' expert to warrant a lecture from the bench. Therefore, the trial judge's failure to chastise plaintiff's counsel did not suggest a lack of even-handedness, because plaintiff's counsel had done nothing wrong, while the witness's comments were clearly inappropriate and the witness got the lecture he deserved.

Other episodes suggesting a combative atmosphere are discussed in more detail in reference to judicial intervention or in reference to evidentiary rulings, because, as in *Jackson,* that is the context in which the combative atmosphere allegedly arose. *Jackson,* 29 F.3d at 402–03 (hostility arose primarily from conflicts over introduction of evidence and the handling of objections). However, again as in *Jackson,* the court specifically instructed the jury that the jury should not take any ruling, action, or remark of the trial judge as suggesting that he had an opinion or suggestion about what the jury's verdict should be, although the instruction in *Jackson* was given as a special instruction after the "tenor of the interactions apparently had escalated." *Jackson,* 29 F.3d at 401–02; *and compare* Instruction No. 2 (instructing the jury, as part of the final instructions, "[n]either in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be"). For these reasons, Traum's motion for new trial must be denied to the extent it is premised on a combative atmosphere between the defendants, their witnesses, or their counsel and the bench.[7]

6. The incident to which Traum refers is the following:

> Q [BY MR. PENNINGTON]: And as a result of this manipulation, as you call it, by the attorneys, I guess you had to do a little damage control and work with Mr. Traum last night, didn't you?
> A [BY MR. WALLER, DEFENDANTS' EXPERT]: Nope. I just tried to explain to him that he should testify to the truth, that he should understand the questions before he answers, and that if the attorney tries to trip him up, make him qualify the—the question.
> Q: He wasn't telling—he didn't know to tell the truth yesterday without your advice, Mr. Waller?
> A: Oh, I'm sure he did.
> Q: Well, Mr. Waller, isn't it a fair statement that in a case like this, we don't need your expert testimony or even our expert testimony when there is a videotape of the entire incident, isn't that the best evidence, Mr. Waller?
> A: Coming from you, counselor, I don't know what a fair statement is.
> THE COURT: Just a minute, now.
> MR. PENNINGTON: Your Honor—
> THE COURT: You answer his questions. If you have something you want to say later, Mr. Phillips will ask you about it, but we don't need your comments and your criticism. You just answer the questions.
> THE WITNESS: Yes, sir.
> Trial Transcript, Vol. III, p. 599, lines 1–23.

7. Traum also contends that a new trial is appropriate under circumstances in which the trial judge recuses himself or herself pursuant to 28 U.S.C. § 455. The trial judge has in fact recused himself from consideration of the post-trial motions in this case, not because he acknowledged a lack of impartiality on his part during trial, but because he found that counsel would be concerned about facing an "uphill" battle on a motion for new trial if the trial judge stood by his post-trial comments. Order of August 23, 1996,

### c. *Judicial intervention*

The keystone of Traum's argument for a new trial based on judicial misconduct is not, however, the antagonistic atmosphere he asserts existed between the bench and defense counsel, but the trial court's actual intervention in the proceedings. In *Jackson*, the court contrasted a hostile atmosphere created by disagreements over evidentiary and other matters with a case in which the trial court actually interjected itself into the proceedings, *United States v. Singer*, 710 F.2d 431 (8th Cir.1983 (en banc)). *Jackson*, 29 F.3d at 401. In *Singer*, "the district court had so far injected itself into the trial as to have deprived the defendants of a fair trial by giving the jury the impression that the court favored the prosecution." *Jackson*, 29 F.3d at 401. In *Singer*, the en banc court, in a six-to-three decision, took umbrage at the following sorts of judicial interventions:

> [The inappropriate judicial interventions were designed] to clarify government testimony, to help government counsel, to indicate to government counsel when he should or should not make objections, to instruct government counsel on how to make his evidence more intelligible, to suggest to him when he should stop the examination of a witness, to indicate to him what he should write on a blackboard in order to illustrate a point to the jury, and the like. In addition, on numerous occasions the court took over the questioning of government witnesses in order to make sure that the somewhat complicated facts of this case were clearly explained.

*Singer*, 710 F.2d at 436.

Similarly, in *United States v. Van Dyke*, 14 F.3d 415 (8th Cir.1994), the court found judicial interventions and lack of neutrality amounting to plain error that deprived the defendant of a fair trial. *Van Dyke*, 14 F.3d at 423. The appellate court found that the trial court's comments throughout the trial had been sufficiently one-sided and distractive to the defendant's case to deprive him of a fair trial. *Id.* at 418. Those comments included comments indicating that the judge

was not paying attention to the defendant's comments, which may have suggested that the defendant was not worth listening to; the court's over-involvement in questioning on behalf of the prosecutor; and interruptions of defense counsel's questioning with invitations to the prosecutor to make objections. *Id.* at 418–19. The appellate court found "that the trial judge not only got into matters that should have been left to the prosecutor on cross-examination; he also essentially 'took over' on behalf of the prosecutor—very possibly giving the jury the impression that he and the prosecutor were working toward a common goal." *Id.* at 419. The appellate court found that the trial judge had "'assum[ed] the mantle' of an advocate—or at least very probably gave the jury the impression that he had done so." *Id.* at 420. The court found that the judge's involvement could very well have passed along the perception to the jury that the judge favored or felt compelled to assist the prosecutor and that the defendant had no defense to the charges. *Id.* The court also intervened by making erroneous or questionable evidentiary rulings and by eliciting testimony on matters not anticipated or invited by either counsel, coupled with apparent disdain for or disbelief of the defense witnesses and counsel. *Id.* at 421–22. The appellate court's conclusion was as follows:

> To summarize regarding the district court's intervention during the trial, we recognize the propriety, and what oftentimes becomes necessity, of a trial judge's intervention in order to assist itself and the jury in their understanding of the case on trial. *See generally [United States v.] Jerde*, 841 F.2d [818,] 823 [ (8th Cir. 1988) ]; Fed.R.Evid. 614(b). Such intervention may especially be necessary where, as here, a defendant is charged with multiple counts involving complex legal and factual issues. However, we find that, viewed as a whole, the record reflects excessive interplay between the district court and witnesses, consistently giving rise to a perception that the judge favored

pp. 2–3. The trial judge specifically stated that he did stand by those comments, and thus would recuse himself. This court has already rejected

the trial judge's post-trial comments as a ground for a new trial.

the prosecution's case. In other words, based on the record we cannot help but conclude that the conduct of the trial judge probably so impressed the jury with his partiality to the prosecution that this became a factor in determining defendant's guilt.

*Van Dyke,* 14 F.3d at 422–23. The court therefore reversed the criminal conviction of the defendant and remanded for a new trial. *Id.* at 424. The court noted further that no one incident involved an error so prejudicial as to warrant reversal, but that the record as a whole established that the defendant's right to a fair trial had been violated. *Id.*

Although the court reached the opposite conclusion, affirming denial of a motion for new trial on the grounds of excessive judicial intervention, the appellate court in *Czajka v. Black,* 901 F.2d 1484 (8th Cir.1990), applied similar principles, stating those principles succinctly as follows:

"In order to reverse on grounds of excessive judicial intervention, the record must either 'disclose actual bias on the part of the trial judge [or] leave the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy and partiality.'" *Warner v. Transamerica Ins. Co.,* 739 F.2d 1347, 1351 (8th Cir.1984) (quoting *United States v. Singer,* 687 F.2d 1135, 1141 n. 10 (8th Cir.1982), *rev'd on rehearing,* 710 F.2d 431 (8th Cir.1983) (en banc); *accord Harris v. Steelweld Equip. Co.,* 869 F.2d 396, 401 (8th Cir.1989), [*cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989)]. Furthermore, we recognize that although "[a] trial judge should never assume the role of advocate, and must preserve an attitude of impartiality in the conduct of a trial," *Warner,* 739 F.2d at 1351 (citations omitted), "a trial judge may question witnesses or comment on the evidence," *id.* "A federal judge is more than a 'mere moderator' or umpire in the proceedings and he may take an active role in conducting the trial and developing the evidence." *Id.*

*Czajka,* 901 F.2d at 1486.

This court has given considerably more scrutiny to comments made by the trial judge *prior to* and *during* the trial than to comments made after the trial. One incident Traum points to as demonstrating improper injection of the trial court into the proceedings occurred prior to trial, in chambers. Trial Transcript, Vol. I, pp. 136–37. In that incident, defense counsel was arguing that evidence of the propriety of the defendants' reactions should be judged against the full background of what the defendants knew when they were on the scene, and the jury needed to decide who did what. The trial judge's response was as follows:

THE COURT: Well, I think that's true, ordinarily, but here we've got a videotape that I've seen, and it's pretty graphic. It's hard to show even two sides of that situation. I assume you said that you were going to somehow say that he raised his hand or he backed off a little bit or something and they thought they had to do this, but the videotape doesn't really support that very well.

If we didn't have a videotape, I think I'd certainly have to buy your argument. I'm not sure where I'm at and that's why I'm asking you, when I have seen the tape.

MR. PHILLIPS: I don't understand the question.

THE COURT: Well, if he—if the tape showed him as trying to kick one of the officers or if the tape showed him doing anything physical at all, then it's a Jury question. But I have watched the tape and I'm trying to figure out—I'd have been better off in ruling here if I hadn't seen the tape, I guess, but I don't think the tape gives you much to argue about.

Now, you may win the case, I'm not on the Jury. I don't want the Defendants to get all nervous about it, but you can't say anything about the tape that shows any aggressiveness on his part or any attempt to commit an assault or battery or anything, can you?

MR. PHILLIPS: I can and I intend to.

THE COURT: Well, you've seen something in the tape I haven't seen, I guess. Anything further by anybody?

Trial Transcript, Vol. I, pp. 136–37.

█ These comments are in no way comparable to the conduct of the trial judge in

*Singer,* or the trial judge in *Van Dyke,* because they did not involve the trial judge assuming the mantle of advocacy in front of the jury to present the plaintiff's case. *Van Dyke,* 14 F.3d at 419–20; *Singer,* 710 F.2d at 436. These comments do indicate that the trial judge had reviewed some of the evidence and felt that it weighed in favor of the plaintiff's case and, perhaps, obviated the need for other evidence of what the defendants perceived about the incident. The trial judge's comments do not appear to this judge to be combative, although they do express the court's doubt about what inferences could be drawn from the evidence that would be favorable to the defendants. However, the comments also indicate that the court recognized that what happened was a jury question. Furthermore, as in *Jackson, Van Dyke,* and *Singer,* the comments were made in chambers, not in the presence of the jury. *Jackson,* 29 F.3d at 401–02; *Van Dyke,* 14 F.3d at 419–20; *Singer,* 710 F.2d at 436. Also as in *Jackson,* the court specifically instructed the jury that the jury should not take any ruling, action, or remark of the trial judge as suggesting that he had an opinion or as a suggestion about what the jury's verdict should be. *See* Instruction No. 2 (given as part of final instructions); *and compare Jackson,* 29 F.3d at 401–02 (given as a specific cautionary instruction when combative exchanges between counsel and the court had occurred in front of the jury). This incident therefore does not suggest improper intervention of the trial judge in the proceedings or suggest the existence of any pervasive bias on the part of the trial judge that infected the trial.

Another incident during trial is specifically highlighted by defense counsel as demonstrating prejudicial conduct by the trial judge. That incident occurred when defense counsel asked the plaintiff if it was true that he was threatening to sue the officers within a matter of seconds after he hit the floor. Trial Transcript, Vol. III, pp. 478–92. Although there was no objection to the question from plaintiff's counsel, the trial judge stopped the proceedings, excused the jury, and during the recess met with counsel in chambers to review the videotape, because the trial judge recalled hearing no such comments on the tape. During that conference, Traum's counsel contends that he was "chastised" for inconsistencies between the transcript provided by Schultz's counsel and the matter Traum's counsel was now asserting. Counsel and the trial judge then had an exchange about whether the "transcript" prepared by plaintiff's counsel was in fact a "transcript" at all and the extent to which defense counsel had been involved in its preparation. Eventually, counsel for defendant found on the videotape the point at which Schultz made a reference to suing the defendants, which was beyond the scope of the "transcript" and some minutes after Schultz had hit the floor.

Upon a return to open court, the trial judge gave the following instruction, which defense counsel asserts was unnecessary and unfairly prejudicial to the defendants:

THE COURT: Please be seated. Members of the jury, I was listening to the matters as we went along here, and I came upon a situation that I was not fully cognizant of, and so I stopped and I wanted to go back and I wanted to listen to this tape, and especially the audio part of it. I'm going to ask the court reporter to read a question that was asked by Mr. Phillips. I'm going to keep still, because when I talk, she can't read. So kindly go ahead, Miss Reporter.

[Question read back from p. 478, line 15 reads: Q: Would you agree with me that you were threatening to sue the officers within 30 seconds of the time you hit the floor?]

THE COURT: All right. I'm not a witness, but I had to watch and listen to this tape five or six or seven or eight times, and I hadn't heard that. So I sent you downstairs, and we listened carefully to this tape. At 2:34:20 on the tape, these words, and they're hard to hear—I don't know whether you heard them when it's been played to you before or not—but the words are these: "If you don't send me to the hospital, I'm going to sue you." And this was six and a half minutes after he hit the floor, and that's at 2:27:51 when he hit the floor.

So what I'm saying to you, that the tape says: "If you don't send me to the hospital, I'm going to sue you." I felt that you should have that accurately brought before you. I'm going to ask you to—direct you to disregard any other question about any other time, and I want you to be aware of the fact that the words "He's going to threaten to sue you" were really, "If you don't send me to the hospital, I'm going to sue you."

All right. Now, let's go back. Mr. Phillips was on cross-examination and you may proceed.

Trial Transcript, Vol. III, pp. 491–92.

■ On the whole, perhaps, with the luxury of hindsight and time for reflection available to this judge, but not available to the trial judge in the heat of trial, it would have been better if the evidence on the tape had simply been brought out by playing the tape or through cross-examination and re-direct examination, rather than through statements of the court. Nonetheless, this judge does not perceive the comments to have exceeded the truth-seeking function of the trial judge to clarify the record or to have been unfairly prejudicial. *Rush*, 56 F.3d at 922; *Czajka v. Black*, 901 F.2d 1484, 1486 (8th Cir.1990) (a trial judge may comment on the evidence and is more than a "mere moderator," so that the judge may take an active role in conducting the trial and developing the evidence). Certainly, time was saved by the court clarifying the timing of the statement and its precise content on a portion of the tape that was difficult to hear and understand. The court attempted to clarify for the jury words that were hard to hear on the tape, but about which the parties actually had no dispute. Although defense counsel may have perceived the trial judge's intervention to be combative, when the issue arose, the trial judge promptly and properly excused the jury, so that counsel and the judge could address what the trial judge thought was a surprising evidentiary development outside of the jury's hearing. *Jackson*, 29 F.3d at 401–02. When the trial judge returned to open court, the court did not harp upon the difference in timing suggested by counsel's question (thirty seconds) and the actual appearance of the comments in the tape (six and a half minutes), nor, apart from stating the language used on the tape, did he harp upon the difference between threatening to sue and threatening to sue if the plaintiff didn't receive medical attention; the trial judge simply clarified what statement was made and when. This judge cannot find that this episode demonstrates a prejudicially combative atmosphere or prejudicial intervention in the presentation of evidence, because the trial judge did not trespass into the realm of advocacy. *Van Dyke*, 14 F.3d at 419–20; *Czajka*, 901 F.2d at 1486. Furthermore, nothing improper was ever conveyed to the jury nor would the jury have reasonably perceived any partiality on the part of the trial judge.

The gist of Traum's next argument, that the trial judge used a "shifting sands" approach to the law of the case, seems to be that the trial judge's shifting rulings on which liability instruction he would give prejudiced Traum by precluding some evidence that would have been relevant to issues on which the jury was ultimately instructed. Traum points out that the trial judge initially ruled that the defendants' subjective beliefs were inadmissible, but then, when defendants' case was already concluded in conformity with that ruling, adopted an instruction to the jury that allowed the jury to consider the purpose for which the defendants used force. Traum contends that this change substantially altered the issues in the trial and is sufficient cause for granting Traum a new trial.

■ Traum is in effect claiming that he is entitled to a new trial, because he ultimately got the jury instruction he was asking for all through the trial. Even assuming there was a difference between the two instructions,[8]

---

8. The comments to Model 4.20, however, states that "[i]t is not clear to what extent this standard [for pretrial detainees, stated in Model 4.20] is different from the fourth amendment reasonableness standard [for arrestees, stated in Model 4.10], or the eighth amendment standard.... Thus, excessive force cases should be resolved by use of the same standard as applied to fourth amendment cases (reasonableness) in the absence of some intermediate standard, which is

the court cannot find from the record that the trial judge's change in which instruction would be given amounted to advocacy or violation of his duty to present an appearance of impartiality. *Jackson,* 29 F.3d at 401–02; *Van Dyke,* 14 F.3d at 419–20; *Czajka,* 901 F.2d at 1486. Nor was the instruction ultimately offered plainly legally erroneous, such that any material prejudice arose. *Gray,* 86 F.3d at 1485; *Fink,* 983 F.2d at 114.[9] Nor can the court find substantial prejudice from any "changing of horses in midstream." That change was plainly not intended to manipulate the proceedings to preclude the defendants from offering exculpatory evidence, which would surely amount to an excessive judicial intervention, but was instead an attempt to conform the instruction to the evidence and the defendants' own requests for instructions. It is plain from the evidence presented that the question of whether the defendants had reasonable concerns for their safety prompting their actions had been presented to the jury. This court can find neither excessive judicial intervention in this episode nor any sufficient prejudice from it justifying a new trial.

### 5. Improper evidentiary rulings

Traum objects to a variety of evidentiary rulings by the trial judge as substantially prejudicing his case and therefore justifying a new trial. In *Norton v. Caremark, Inc.,* 20 F.3d 330, 338 (8th Cir.1994), the Eighth Circuit Court of Appeals noted that *Fed. R.Civ.P.* 61 specifically prohibits the grant of a new trial based on errors in admission of evidence, "unless refusal to take such action appears to the court inconsistent with substantial justice." Evidentiary rulings are reviewed under an abuse of discretion standard. *Bunting,* 99 F.3d at 891. The court may properly exclude evidence that is irrelevant or cumulative. *Id.* Furthermore, where the questioned rulings fall within the

court's discretion under the Federal Rules of Evidence and the substance of those rulings does not amount to plain error, there is no ground for a new trial based on evidentiary rulings. *Jackson,* 29 F.3d at 401. To put it another way,

> A trial court must determine whether an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result. *Williams v. Mensey,* 785 F.2d 631 (8th Cir.1986); *Warner [v. Transamerica Ins. Co.],* 739 F.2d [1347,] 1354 [ (8th Cir.1984) ]. We may only find a trial court's determination of the admissibility of evidence was prejudicial where there has been a clear abuse of discretion. *Warner,* 739 F.2d at 1350.

*O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1200 (8th Cir.1990). This court will consider Traum's specific objections to evidentiary rulings *seriatim.*

### a. Testimony of plaintiff's expert

In one of his objections to evidentiary rulings, Traum contends that the trial judge improperly allowed plaintiff's expert, Frank Saunders, to opine that he did not perceive any act of aggression by Schultz when he watched the videotape when the trial judge had excluded testimony by the defendants concerning their subjective beliefs about the incident. Traum appears to assert both a "fairness" argument and his contention that the testimony permitted was not proper expert testimony.

This court is troubled by this objection, because of the trial judge's ruling that reciprocal evidence of subjective perceptions of the incident in favor of the defendants was inadmissible. However, this court has reviewed *Fed.R.Evid.* 702 and 704, and cannot say that the trial judge's admission of this expert testimony was a clear abuse of discre-

not currently available. This instruction uses the reasonableness standard." Eighth Circuit Model Civil Instruction 4.20, Committee Comments.

9. The court notes that the statement of the elements in model instructions 4.10 and 4.20 is identical, and the list of factors the jury is to consider is almost identical, with the one exception that among this list of factors in 4.20 is found "whether [force] was used for punishment

or instead to achieve a legitimate purpose...." Eighth Circuit Model Civil Instruction 4.20. Neither instruction "focuses" on subjective beliefs of the defendants, as Traum would have it; rather, both focus on the *reasonableness* of the defendants' conduct. *See* Eighth Circuit Model Civil Instructions 4.10, 4.20, and committee notes.

tion or inconsistent with substantial justice. *Jackson*, 29 F.3d at 401; *Norton*, 20 F.3d at 338; *Fed.R.Civ.P.* 61. Furthermore, if admission of this expert testimony was error, it was certainly harmless error. First, the jury was instructed that it was for them to decide what weight to give expert testimony. Instruction No. 6. Second, the expert's observation is harmless in light of the best evidence of what happened during the incident, the videotape, which had already been presented to the jury. This evidentiary objection therefore does not provide the basis for a new trial in this case.

Traum's nutshell argument that other evidentiary rulings prejudiced his case, as stated at oral arguments, is that the rulings made the plaintiff look like a "choirboy." The objections to these evidentiary rulings are considered in turn below.

### b. Post-incident language and behavior

■■■Traum objects to the trial judge's ruling that "cursing" by Schultz should be edited out of the videotape. Traum claims that this evidence of cursing somehow rebuts Schultz's argument that he was in tremendous pain immediately after the incident, and the ruling prevented defendants from arguing effectively about a lack of evidence of pain. He contends further that the jury's sizeable award for past pain and suffering demonstrates the effect this ruling had on his substantial rights. This court is unconvinced.

The evidence of "cursing" fits within a fair reading of *Fed.R.Evid.* 403, which permits excluding evidence that is relevant on the grounds of the danger of unfair prejudice. The jury did not need to be subjected to hearing the specific content of the "cursing" to be aware that it occurred, even on the edited version of the videotape. Furthermore, anyone who has banged his thumb knows that "cursing" is often an expression of pain, rather than an indication that the speaker is suffering no pain. Thus, the court is not persuaded that some necessary inference in defendants' favor concerning the plaintiff's post-incident pain could be drawn from evidence of the actual words used. Exclusion of "cursing" fell within the trial

judge's discretion under the Federal Rules of Evidence and the substance of the ruling does not amount to plain error. *Bunting*, 99 F.3d at 891; *Jackson*, 29 F.3d at 401. Furthermore, this court certainly cannot find that the ruling on "cursing" is "inconsistent with substantial justice." *Norton*, 20 F.3d at 338; *Fed.R.Civ.P.* 61. No new trial will be granted on this ground.

### c. Valium

■■■ Traum objects to the exclusion of evidence that Schultz was taking Valium in addition to drinking substantial amounts of beer on the night of the incident. Traum contends that this combination of drugs and alcohol induced Schultz's irrational behavior, which he contends gave rise to the incident in which force was used. His argument is that the evidence of use of Valium would have mitigated any suggestion that the defendants over-reacted to a situation in which they did not need to intervene. This argument is also unpersuasive. There is no evidence in the record that the officers knew what might be affecting Schultz's behavior, beyond the fact that some of them knew he was intoxicated; but even so, it is not the cause of Schultz's behavior that is properly a question in this case, but what that behavior was, and whether the defendants' reaction to Schultz's behavior was a reasonable use of force. Again, this ruling to exclude the evidence of Valium use was well within the trial judge's discretion under *Fed.R.Evid.* 403, and the substance of the ruling does not amount to plain error. *Bunting*, 99 F.3d at 891; *Jackson*, 29 F.3d at 401. Nor is the ruling "inconsistent with substantial justice." *Norton*, 20 F.3d at 338; *Fed.R.Civ.P.* 61. No new trial will be granted on this ground, either.

### d. Pre-incident arrests and incarceration

■■■ Traum also objects to exclusion of evidence that Schultz had been jailed on six prior occasions and that one of those occasions was just weeks before the incident in question in this lawsuit occurred. Traum suggests that this evidence would have indicated that Traum was familiar with jail procedures and that his failure to follow them created the situation giving rise to his injury.

Exclusion of evidence of prior arrests is permissible to prevent unfair prejudice, *Fed. R.Evid.* 403, and, in this case, the evidence would also have been unnecessarily cumulative, *id.*, because evidence came in, through Schultz himself, that he was familiar with jail procedures. Once again, exclusion of this evidence fell within the trial judge's discretion under the Federal Rules of Evidence and the substance of the ruling does not amount to plain error. *Bunting,* 99 F.3d at 891; *Jackson,* 29 F.3d at 401. This court certainly cannot find that the ruling on exclusion of pre-incident arrests is "inconsistent with substantial justice." *Norton,* 20 F.3d at 338; *Fed.R.Civ.P.* 61. Therefore, no new trial will be granted on this ground.

### e. Circumstances of Schultz's arrest

 Similarly, the exclusion of evidence that Schultz was driving without a license is not sufficiently prejudicial to require a new trial. Traum asserts that this evidence would have rebutted any suggestion that there was no reason for the incident at the jail, because it would have demonstrated that the officers had not already obtained all the information they needed. Traum contends that the clear implication from the evidence as allowed at trial was that the defendants could simply have gotten the information they were requesting when the incident took place by looking at Schultz's driver's license.[10] Again, the trial court could reasonably have ruled that whether the officers "needed" the information they were requesting when the incident took place was at best marginally relevant to whether the defendants over-reacted to Schultz's failure to give that information or any of his other conduct, while evidence of the nature of the circumstances of the arrest could have unfairly prejudiced Schultz's case by painting him as a bad person. Again, this ruling to exclude evidence of the circumstances of Schultz's arrest was well within the trial court's discretion under *Fed.R.Evid.* 403, and the substance of the ruling does not amount to plain error. *Bunting,* 99 F.3d at 891; *Jackson,* 29 F.3d at 401. Nor is the ruling "inconsistent

with substantial justice." *Norton,* 20 F.3d at 338; *Fed.R.Civ.P.* 61. No new trial will be granted on this ground.

### f. The medical records

Traum asserts that a new trial is required, because the court allowed medical records, already in evidence, to be redacted to exclude notes by treating physicians about the circumstances of the incident giving rise to Schultz's injuries and this lawsuit and to remove references to Schultz's use of Valium. Traum contends that the court redacted the records, leaving everything that was helpful to Schultz in, while removing everything that was harmful to his case. This ground for new trial also is not persuasive.

 First, removal of references to Valium merely conformed the records to the court's prior ruling that evidence of use of Valium was not admissible. No convincing argument can be made that the trial judge improperly interjected himself into redacting these records, when the record is clear that the trial judge's objective was to move matters along and to conform the records to his prior ruling. Trial Transcript, Vol. II, pp. 159–78. A trial judge may with propriety intervene in order to assist itself and the jury in their understanding of the case on trial. *Van Dyke,* 14 F.3d at 422–23. Furthermore, redaction of the records to exclude second-hand recitals of how the incident causing Schultz's injuries occurred was proper, even if that evidence might have some relevance, on the ground that it might be confusing or misleading to the jury or simply cumulative, when the jury had been presented with substantial other evidence of how the incident occurred in the form of the videotape and the testimony of Schultz and the defendants. The rulings on the medical records were therefore well within the trial court's discretion under *Fed.R.Evid.* 403, and the substance of the rulings does not amount to plain error. *Bunting,* 99 F.3d at 891; *Jackson,* 29 F.3d at 401. Furthermore, the rulings are not "inconsistent with substantial

10. Schultz points out that the jail has "John Doe" booking procedures that could have been used when Schultz refused to identify himself.

justice." *Norton,* 20 F.3d at 338; *Fed. R.Civ.P.* 61. Consequently, no new trial will be granted on this ground.

### 6. Summary

This court concludes that no new trial is appropriate in this case on any of the grounds Traum has asserted. The verdict is adequately supported by the evidence. The challenged jury instruction, taken as a whole, did not improperly permit a verdict for the plaintiff on the ground of mere negligence and did not cause material prejudice. Furthermore, the trial judge neither improperly injected himself into the proceedings nor made evidentiary rulings that substantially prejudiced Traum's case. Even if this court were persuaded that any one of the challenged incidents involved an error, that error was not so prejudicial as to warrant reversal, nor does the record, as a whole, establish that Traum's right to a fair trial has been violated. *Cf. Van Dyke,* 14 F.3d at 424 (finding that no single error was so prejudicial as to warrant reversal, but the record as a whole established that the defendant's right to a fair trial had been violated). Traum's motion for new trial is therefore denied. As a consequence of denial of the new trial motion, the court must now consider Schultz's application for an award of fees and costs as a prevailing party in this litigation.

### B. Application For Fees And Costs

On June 20, 1996, Schultz filed a claim for approximately $115,000 in fees and expenses as a "prevailing party" in the litigation. Traum resists the fee application on the ground that it is excessive in terms of hours spent, hourly rate claimed, and the plaintiff's limited success against only one of several defendants on only one of several claims. The court agrees that the fee claim is in some respects excessive.

### 1. Authority for and purpose of fee awards

Section 1988 of Title 42 provides for the payment of attorneys' fees to prevailing parties in § 1983 cases such as this. 42 U.S.C. § 1988; *Jensen v. Clarke,* 94 F.3d 1191, 1203 (8th Cir.1996). That statute provides, in pertinent part, as follows:

> In any action or proceeding to enforce a provision of section[ ] ... 1983, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. Thus, a fee award pursuant to § 1988, as the statute says, is made at the discretion of the court. *Jensen,* 94 F.3d at 1203; *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 804 (8th Cir.1993), *cert. denied,* 513 U.S. 932, 115 S.Ct. 325, 130 L.Ed.2d 285 (1994).

In *Casey,* the Eighth Circuit Court of Appeals found that a fair evaluation of a fee claim required review of the purpose of § 1988:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See* Id. A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).
>
> In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex

Federal litigation, such as antitrust cases...." S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

*Casey,* 12 F.3d at 805. The Supreme Court has also said that "[t]he purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 94–1558, p. 1 (1976)). Consequently, the Supreme Court has said, "[A] prevailing plaintiff ' "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' " *Id.* (quoting S.Rep. No. 94–1011, p. 4 (1976), in turn quoting *Newman v. Piggie Park Enter., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). With this purpose, and this general standard, for an award of fees in civil rights cases in mind, the court turns to evaluation of the fee claim in this case.

### 2. "Prevailing party"

Section 1988 authorizes awards of reasonable attorneys' fees to a "prevailing party." 42 U.S.C. § 1988. Thus, the initial question regarding the propriety of awarding attorneys' fees in a case such as this is whether the plaintiff can be characterized as a prevailing party. *Casey,* 12 F.3d at 804. In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court stated that a party is a "prevailing party" when he or she " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.' " *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *accord Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992) (a prevailing party is one who obtains "at least some relief on the merits of his claim"); *Casey,* 12 F.3d at 804 (quoting *Farrar*). Thus, the prevailing party inquiry "does not turn on the magnitude of the relief obtained." *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574; *Casey,* 12 F.3d at 804.

In *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers,*

26 F.3d 842 (8th Cir.1994), the Eighth Circuit Court of Appeals found that the Supreme Court had recently "delineated the extreme contours of what constitutes a prevailing civil rights plaintiff for purposes of fee-shifting" in *Farrar:*

In *Farrar,* the Court re-examined three recent civil rights attorneys' fee decisions to refine the definition of a prevailing civil rights plaintiff under 42 U.S.C. § 1988. *Farrar,* 506 U.S. at 109–112, 113 S.Ct. at 572–73 (discussing *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). In *Farrar,* the Court was confronted with the case of a plaintiff who won nominal damages under section 1988; a plaintiff whom Justice O'Connor characterized with, "[i]f ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar," *Farrar,* 506 U.S. at 116, 113 S.Ct. at 575 (O'Connor, J., concurring). Give this factual scenario, the Court rejected in part the *Garland* conception of prevailing party as underinclusive: "[A] technical victory may be so insignificant ... as to be insufficient to support prevailing party status." *Garland,* 489 U.S. at 792 [109 S.Ct. at 1493]. According to the Court, even a technically victorious plaintiff would be a prevailing party for purposes of section 1988. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under *Hensley v. Eckerhart,* 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983)." *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574. Thus, the Court held that a plaintiff who received nominal civil rights damages is a prevailing party under section 1988, but is not necessarily entitled to attorneys' fees because, under section 1988, prevailing parties are entitled only to *reasonable* at-

torneys' fees. The nominal damage award is a factor to consider in determining the reasonableness of such fee awards, but not a factor in determining the prevailing status of the *plaintiff*. As Justice O'Connor explains in her concurrence, "when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees.... As a matter of common sense and sound judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the *de minimis* nature of the victory makes the proper fee immediately obvious. Instead, it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to 'award low fees or no fees' at all." *Farrar*, 506 U.S. at 118, 113 S.Ct. at 576 (O'Connor, J., concurring). *Marquart*, 26 F.3d at 850. It is readily apparent, however, that Schultz is not at the extreme of what constitutes a "prevailing party" in a § 1983 case, but is instead much more than a "technical" victor, even though he obtained relief on only one of his many claims against only one of the many defendants. Schultz obtained very significant relief in the form of damages on his civil rights claim of use of excessive force, relief that "materially alter[ed] the legal relationship of the parties." *Marquart*, 26 F.3d at 850 (citing *Farrar*, 506 U.S. at 113, 113 S.Ct. at 574). He is therefore not a plaintiff who has obtained only nominal relief, and consequently not a party who "prevailed," but is nonetheless entitled to no award of fees. *Cf. Marquart*, 26 F.3d at 850 (under *Farrar*, a party who received nominal civil rights damages is a prevailing party under § 1988, but is not necessarily entitled to an award of attorneys' fees, because such an award might not be "reasonable"). Instead, the court concludes that Schultz not only is a "prevailing party," but one entitled to an award of some *reasonable* attorneys' fees.

Not only does Schultz's partial success not strip him of his status as a "prevailing par-

ty," but it is not a "special circumstance" that would render an award of fees unjust in this case, and the court finds that no other "special circumstance" exists, either. *See Hensley*, 461 U.S. at 429, 103 S.Ct. at 1937 (fee award should only be denied to a prevailing party if "special circumstances" exist).[11] Therefore, the court turns to the next question, which is the method for calculating what fee award is "reasonable" in this case.

### 3. Calculation

The method employed by the Supreme Court for calculating attorneys' fees is known as the "lodestar" method. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Jensen*, 94 F.3d at 1203. The Supreme Court has stated that in construing § 1988 attorneys' fees, "we have generally turned away from the contingent-fee model to the lodestar model of hours reasonably expended compensated at reasonable rates." *Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S.Ct. 1679, 1682, 109 L.Ed.2d 74 (1990); *see also City of Burlington v. Dague*, 505 U.S. 557, 561, 112 S.Ct. 2638, 2640, 120 L.Ed.2d 449 (1992); *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986); *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion); *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). Thus, under the lodestar method, the district court multiplies the number of hours reasonably expended by the relevant market rate for legal services, then reduces the amount for partial success, if necessary. *Jensen*, 94 F.3d at 1203; *accord Delaware Valley*, 478 U.S. at 565, 106 S.Ct. at 3098 (the lodestar is "the product of reasonable hours times a reasonable rate").

The Supreme Court in *Hensley* and *Delaware Valley* considered a number of factors, identified in *Johnson v. Georgia Highway*

---

11. Traum does not suggest that Schultz's partial success is a "special circumstance" that should preclude entirely an award of fees in this case, nor does he suggest that any other "special circumstance" should preclude an award. Rather, he argues that Schultz's partial success should reduce the award, and the court will consider that argument below.

*Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974), and hence called the *"Johnson* factors," as relevant to determination of an appropriate fee under the lodestar method. *See Hensley,* 461 U.S. at 430 & n. 3, 103 S.Ct. at 1937 & n. 3; *accord Delaware Valley,* 478 U.S. at 565–66, 106 S.Ct. at 3098–99.[12] The Eighth Circuit Court of Appeals agrees that these factors "should be used to set the reasonable number of hours and reasonable hourly rate components of the fee award formula." *McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir.1988). The trial court may undertake various reductions of the claimed fees, based, for example, on limited success, an unreasonable hourly rate, excessive hours expended, or poor record keeping. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992).[13] However, " '[t]he lodestar award ... is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed in the lodestar.' " *Casey,* 12 F.3d at 805 (quoting *Hendrickson v. Branstad,* 934 F.2d 158, 162 (8th Cir.1991).

In discussing the usefulness and the role of the lodestar methodology in more detail, the Supreme Court has stated the following:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley,* 461 U.S. at 433–34, 103 S.Ct. at 1939–40; *Jensen,* 94 F.3d at 1203 (the lodestar method "focuses on 'the significance of the overall relief obtained by the plaintiff in relation to the hours actually expended on the litigation,' " quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940); *United Healthcare Corp. v. American Trade Ins. Co., Ltd.,* 88 F.3d 563, 574 & n. 9 (8th Cir.1996) ("It remains the applicant's burden to establish entitlement to a particular award by presenting adequate documentation of its efforts in the litigation," citing *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941).

#### a. Partial success

■ Traum contends that Schultz's fee claim should be reduced, because Schultz prevailed on only one of his many claims against only one of several defendants. The

**12.** The twelve *Johnson* factors include the following:
 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases.
*Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3 (citing *Johnson,* 488 F.2d at 717–19).

**13.** The extent to which the lodestar figure may be enhanced has been called into serious question. *See Dague,* 505 U.S. at 557, 112 S.Ct. at 2638. However, because no enhancement has been sought, whether such an enhancement is still possible is not an issue in this case.

success of the litigant determines not only whether he or she is a "prevailing party" entitled to any fee award at all, but also is "crucial" to determining the amount of any fee award. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees under 42 U.S.C. § 1988."). In a fee-claim action, in deciding the amount of attorneys' fees to which the prevailing party is reasonably entitled, the Supreme Court has said that "the result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Thus, the degree of success determines the extent to which the claimant may recover attorney fees, such that for "excellent results," a plaintiff should recover for his or her counsel "a fully compensatory fee," but for partial or limited success, fees based on the product of the hours reasonably expended on the litigation as a whole and a reasonable hourly rate "may be an excessive amount." *Hensley*, 461 U.S. at 435–36, 103 S.Ct. at 1940–41.

◼ However, the Supreme Court has also cautioned that an action for attorneys' fees "should not result in a second major litigation" revisiting the merits of the underlying action. *Commissioner, Immigration and Naturalization Serv. v. Jean*, 496 U.S. 154, 163, 110 S.Ct. 2316, 2321, 110 L.Ed.2d 134 (1990) (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941); *Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 766, 109 S.Ct. 2732, 2739, 105 L.Ed.2d 639 (1989) (quoting *Hensley*); *Pierce v. Underwood*, 487 U.S. 552, 563, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988) (quoting *Hensley*); *Blum v. Stenson*, 465 U.S. 886, 901 n. 19, 104 S.Ct. 1541, 1550 n. 19, 79 L.Ed.2d 891 (1984) (quoting *Hensley*). The Court in *Jean* observed that requiring revisiting the merits of the underlying litigation at each stage attorneys'

fees are requested "can spawn a 'Kafkaesque judicial nightmare' of infinite litigation to recover fees for the last round of litigation over fees." *Jean*, 496 U.S. at 163, 110 S.Ct. at 2321 (citing *Cinciarelli v. Reagan*, 234 U.S.App.D.C. 315, 324, 729 F.2d 801, 810 (1984)). Furthermore, where the plaintiff's successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based on related legal theories, it is not an abuse of discretion for the court to award the entire fee. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.[14] The Eighth Circuit Court of Appeals has made plain that "[o]nce a party is found to have prevailed, '[a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit.'" *Casey*, 12 F.3d at 806 (quoting *Hendrickson*, 934 F.2d at 164).

◼ In the present case, the court finds that, although Schultz prevailed against only one of several defendants, and upon only one of his claims against that defendant, no dramatic reduction in fees is required. Instead, the court finds that the majority of claims against the majority of defendants were inextricably intertwined and involved a common core of facts as well as related legal theories. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.[15] Exceptions are the claims against the City of Sioux City and the defendants who were Sioux City police officers. The liability of these defendants was contingent upon finding that they had a duty to intervene in the altercation Schultz alleged caused his injuries, not upon the facts or theories that would have established liability for the defendants actually involved in that altercation. Thus, the court finds that an across-the-board reduction of five percent in the fees

---

**14.** The Supreme Court elaborated further on this theme in *Hensley*:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the

district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

**15.** The state common-law claims were based on essentially the same core of facts, even if they were founded on different legal theories.

claimed is appropriate to account for lack of success against the city defendants.[16]

### b. Excessive hourly rate

Traum also contends that the hourly rate claimed by Schultz's counsel, $200 per hour, is not reasonable, particularly as compared to his own counsel's rate of $90 per hour. Traum contends further that it is inappropriate to award fees based on an hourly rate that may prevail in Des Moines, where Schultz's counsel practice, when the rate in Sioux City would presumably be considerably lower. However, Traum's counsel admitted that, apart from himself, he was unaware of any attorneys in Sioux City doing a significant amount of civil rights litigation pursuant to § 1983.

In *Blum*, the Supreme Court found that a fee award under § 1988 should be calculated using "market rates," and that the "requested rates [should be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895–96 & n. 11, 104 S.Ct. at 1547 & n. 11. The Eighth Circuit Court of Appeals has noted, however, that the Supreme Court did not define "community" in *Blum*, although "community" should probably be given an expansive reading, and the Eighth Circuit Court of Appeals suggested in that ruling

that the entire state may be the relevant market. *McDonald*, 860 F.2d at 1459 n. 6.

The state itself may not be a boundary to the determination of a reasonable hourly rate. In *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517 (8th Cir.1995), the Eighth Circuit Court of Appeals recently held that the appropriate hourly rate for § 1983 litigation conducted in South Dakota was to be determined by the prevailing rates in the Chicago market for legal services, where the prevailing plaintiff's lawyers were from Chicago, were leaders in the field of law in question, and routinely did the kind of work in question. *Miller*, 70 F.3d at 519. This was so, even though the court agreed with the defendant that competent local counsel could have been found to handle the case and do it well. *Id.* The court of appeals upheld use of the Chicago rate, because it found that the out-of-state attorneys were able to handle the case in a shorter length of time than a local lawyer without comparable experience would have needed. *Id.*

Furthermore, in attorney fees matters, trial courts have been instructed to utilize their own knowledge relating to various aspects of the lodestar. "The trial judge should weigh the hours claimed against his [or her] knowledge, experience and expertise of the time required to complete similar activities." *Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir.) (citing *Johnson*, 488

---

**16.** Although some courts, including from time to time the Eighth Circuit Court of Appeals, have indicated a preference for hour-by-hour reductions, *see, e.g., H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 261 (8th Cir.1991), others have recognized that percentage cuts may be appropriate. *See, e.g., New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983). In *Carey*, the Second Circuit Court of Appeals provided a cogent explanation for this approach:

> [C]ourts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application.... These courts have endorsed percentage cuts as a practical means of trimming fact from a fee application.

*Carey*, 711 F.2d at 1146 (citations omitted). Furthermore, in *Hensley*, the Supreme Court specifically recognized that, when a district court determines that a reduction for limited success is appropriate, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at

436–37, 103 S.Ct. at 1941; *see also Bee v. Greaves*, 910 F.2d 686, 689 (10th Cir.1990) (quoting *Hensley* for this proposition and applying its method and rationale). Courts have endorsed across-the-board reductions for other reasons, too. *See, e.g., Stewart v. Gates*, 987 F.2d 1450 (9th Cir.1993) (a percentage reduction of a fee application under § 1988 is appropriate when the fee request is either very large or very small). The Eighth Circuit Court of Appeals also apparently recently endorsed across-the-board percentage reductions for various reasons. *Jensen*, 94 F.3d at 1203 (affirming the district court's 10% across-the-board reduction for poor documentation, and affirming the district court's rejection of a 75% across-the-board reduction for limited success, not because that method was inappropriate, but because, as the district court found, the relief granted had been "major"). The first reduction to the fee claim made here, for limited or partial success, falls within the Supreme Court's specific authorization for a percentage, rather than hour-by-hour, reduction. *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941.

F.2d at 717, the same decision relied upon in *Hensley* and *Delaware Valley* as stating appropriate factors for determination of attorneys' fees), *cert. denied*, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *accord Saxton v. Secretary, DHHS*, 3 F.3d 1517, 1521 (Fed.Cir.1993) ("Trial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests," citing cases); *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984) ("The Court ... may bring to bear its knowledge and experience concerning ... the time demands of the particular case.").

As in *Miller*, the court finds that, although Sioux City counsel probably could have been found to handle the case well, few counsel with any experience doing so were identified by the defense. *Cf. Miller*, 70 F.3d at 519. In light of the nature of this litigation, the court finds that the relevant "community" can reasonably be construed to be all of Iowa, not just Sioux City, because few lawyers statewide are engaged in § 1983 litigation on behalf of arrestees or detainees. *Cf. McDonald*, 860 F.2d at 1459 n. 6 (doubting that central Missouri was the relevant "community" instead of the entire state, because the litigation took place in the capitol of the state and lawyers from throughout the state had business there). Although there might be some argument for reducing the rate, because Sioux City is not the metropolitan area that Des Moines is, and hourly rates here are, in general, lower than in Des Moines, *McDonald*, 860 F.2d at 1460 (recognizing such an argument as between "rural" and "urban" areas, but rejecting it in that case), the hourly rate claimed, in the court's view, is not excessive for the kind of litigation in question in the statewide market. *Gilbert*, 867 F.2d at 1066 (court may evaluate hours and rate claimed in light of its own knowledge, experience, and expertise). Nor is the hourly rate claimed excessive in light of the *Johnson* factors. *See, e.g., Hensley*, 461 U.S. at 430 & n. 3, 103 S.Ct. at 1937 n. 3 (citing *Johnson*, 488 F.2d at 717–19). Specifically, the hourly rate claimed is appropriate for the skill required, the preclusion of other employment, the customary rate charged by Schultz's counsel, the amount involved and the results obtained, the experience, reputation, and ability of these attorneys, the "undesirability" of prosecuting a civil rights action against the county or county officials, the nature and length of service involved, and awards in similar cases this court has tried. *Johnson*, 488 F.2d at 717–19. Therefore, the court will not reduce the hourly rate claimed in its computation of a reasonable fee.

### c. Hours not reasonably expended

Traum also asserts that the hours claimed were not all reasonably expended. He points specifically to the fact that two attorneys tried the case for the plaintiff resulting in some duplication of efforts, even if double-staffing seemed an appropriate course for plaintiff's counsel to take. In essence, Traum contends that he should not be liable for all of the fees, just because plaintiff's counsel made a strategic decision to try the case with two attorneys.

The Eighth Circuit Court of Appeals recently found that it was error for the trial court to limit attorneys' fees pursuant to § 1988 to only one of the plaintiff's attorneys on a juvenile's successful jury claim in a § 1983 action. *A.J. v. Kierst*, 56 F.3d 849, 865 (8th Cir.1995). Therefore, the appellate court remanded for determination of an appropriate fee award. *Id.* The court stated that "we find no legal basis for either the court's initial order or its ultimate decision limiting fees to one attorney." *A.J.*, 56 F.3d at 863. The court explained further:

> The use of more than one attorney in multiple party litigation has been recognized by courts, including our own, as both desirable and common.
>
> [W]here more than one attorney represents the prevailing party, the contribution of all attorneys must be taken into consideration and the fees awarded should reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that would be performed by nonlawyers.

*Reynolds v. Coomey*, 567 F.2d 1166, 1167 (1st Cir.1978); *see also Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir.1985); *Catlett v. Missouri Highway & Transp. Comm'n*,

828 F.2d 1260, 1271 (8th Cir.1987)[, *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988) ]; *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir.1992); *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). *A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used. Johnson, 706 F.2d at 1208. We are not aware of any cases, however, which hold that a court may reduce attorneys' fees solely on the basis that multiple attorneys helped to secure a prevailing party's success.* In deciding the proper amount of fees to award, the court did not review plaintiffs' fee request to determine whether the work of three attorneys who expended considerable time and effort on A.J.'s jury claim improperly duplicated the work of Ms. Johnson. The court, rather, simply relied on its January 1990 order in which it, without explanation or the benefit of having heard any evidence, announced that it would consider awarding fees to only one of plaintiffs' attorneys.

*A.J.*, 56 F.3d at 863–64 (emphasis added). Thus, there is no *per se* rule that only one attorney should try a § 1983 claim or only one attorney should be compensated pursuant to § 1988. The proper question is whether the application, for one or more attorneys, is *reasonable*, eliminating inefficiencies or duplications that might arise from use of more than one attorney. *Id.*

Other courts concur. The Supreme Court has stated that a case must not be "overstaffed" and hours claimed must not be "redundant," employing the same "billing judgment" that would be applicable in the private sector. *Hensley*, 461 U.S. at 433–34, 103 S.Ct. at 1939–40. In *Cooper v. Pentecost*, 77 F.3d 829 (5th Cir.1996), the court addressed an argument by two attorneys that the district court erred in reducing their fees based on the court's belief that, in several instances, the hours the attorneys submitted were duplicative and repetitive. *Cooper*, 77 F.3d at 831. The appellate court, however, upheld the district court's finding that some of the attorneys' hours were duplicative and repetitive, where the district court specifically listed several examples of what it considered duplicative or repetitive work and there was insufficient documentation to rebut the district court's conclusion. *Id.* at 832. Similarly, the Fourth Circuit Court of Appeals upheld a reduction of fees for multiple attorneys in a § 1983 lawsuit where the district court found that the efforts of two additional attorneys in depositions were duplicative and contrary to a duty under § 1988 to minimize expenses, and the appellate court found that the district court had the discretion to reduce attorneys' fees claims for "overstaffing." *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76–77 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995).

Although the court recognizes that some coordination of the activities of two attorneys is necessary, the court's review of the fee claim reveals a number of times when both counsel claimed what the court views as an excessive amount of time discussing the case with each other.[17] This is the sort of "inefficiency and duplication of services" that may occur in cases where more than one attorney is used. *A.J.*, 56 F.3d at 864. The court therefore will make a ten percent across-the-board reduction for inadvertent duplication of effort arising from staffing the case with two attorneys.[18]

---

17. For example, counsel claimed five hours each for discussion of the claim and strategies on October 20, 1994, when the lawsuit was but newly filed; each claimed three-and-one-half hours on February 1, 1995, for an issues conference; each claimed three-and-one-half to four hours on March 29, 1995, discussing whether or not to resist the Sioux City defendants' motion for summary judgment; and similar duplications occurred on August 23, 1995, September 30, 1995, and March 14, 1996.

18. The court deems a percentage reduction, rather than an hour-by-hour reduction, to be appropriate for overstaffing or redundancy, for much the same reason it is appropriate for partial success. *See supra* note 16. Specifically, the court does not think an item-by-item evaluation is either warranted or practical. *Carey*, 711 F.2d at 1146; *and compare Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941 (permitting a percentage reduction for limited success rather than an hour-by-hour determination of what hours were

■ The court finds that a further reduction is also necessary for time not "reasonably expended." *Hensley,* 461 U.S. at 433–34, 103 S.Ct. at 1939–40. In addition to inadvertent duplication, the court finds that hours claimed by individual counsel for Schultz for some activities are somewhat excessive. *Gilbert,* 867 F.2d at 1066 (court may evaluate hours and rate claimed in light of its own knowledge, experience, and expertise). Prime examples of time not reasonably expended are the frequency with which each counsel claims several hours spent reviewing the videotape, which, though a critical piece of evidence, simply is not that long. Another example is the amount of time claimed for preparation of the proposed scheduling order and discovery plan. However, the court's view that some of the hours claimed were not reasonably expended is considerably tempered by the fact that counsel for Schultz did *not* claim travel time for which they were entitled to be compensated.[19] Therefore, the court will impose only a five percent across-the-board reduction for time not reasonably expended in addition to the ten percent reduction for inadvertent duplication.[20]

### 4. Costs

■ Schultz also claims $14,508.67 as "costs" of this action. Traum objects to a number of items claimed as "costs" on the ground that they are not permissible "costs" under 28 U.S.C. § 1920, and objects to other of these "costs" as excessive. However, although some of the "costs" claimed are not available under 28 U.S.C. § 1920, "reason-able out-of-pocket expenses of the kind normally charged to clients by attorneys ... should [be] included as part of the reasonable attorney's fees awarded" under 42 U.S.C. § 1988. *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294 (8th Cir.1996) (citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 1141 n. 3, 113 L.Ed.2d 68 (1991); *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1216 n. 7 (9th Cir.1986); *Laffey v. Northwest Airlines, Inc.,* 241 U.S.App.D.C. 11, 746 F.2d 4, 30 (1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); *Northcross v. Board of Educ.,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980)). The court finds that the only "cost" claimed that is excessive or duplicative is the airfare for a second attorney to attend the deposition of plaintiff's expert in San Francisco. Therefore, the costs claimed will be reduced by $397.00 to $14,111.67.

### 5. Summary

Altogether, the court finds that a twenty percent across-the-board reduction of Schultz's fee claim is appropriate. This aggregate reduction is comprised of a five percent reduction for partial success, disallowing fees for claims not interrelated with the one upon which Schultz prevailed, and a fifteen percent reduction for time not reasonably expended, based on a ten percent reduction for inadvertent duplication of effort, and a further five percent reduction for hours otherwise not reasonably expended. As a consequence of these reductions, the court

---

applied to what claims). The court believes that a percentage reduction is appropriate where it is difficult to determine which precise hours charged by two attorneys are redundant, but the court is left with the distinct impression from consideration of the fee claim as a whole that some redundancy must be cut from the fee application. This is simply another situation in which this court believes that it "necessarily has discretion in making this equitable judgment." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

**19.** In *Henry v. Webermeier,* 738 F.2d 188 (7th Cir.1984), Judge Posner engaged in an analysis of the propriety of claiming travel time at the same hourly rate as hours claimed for other activities. *Henry,* 738 F.2d at 193–94. Similarly, the Eighth Circuit Court of Appeals has recognized that travel time may, but does not have to

be, compensated at the same hourly rate as other work when awarding fees pursuant to § 1988. *McDonald,* 860 F.2d at 1462–63.

**20.** Although the court might be able to conduct a precise, item-by-item determination of which hours were not reasonably spent, the court must adjust this determination in this case by counterbalancing travel hours not claimed. Thus, a percentage reduction is once again both practical and appropriate, because the court is making an "equitable judgment" based on the fee claim as a whole. *Compare Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941 (the court necessarily has the discretion to make an equitable judgment to reduce a fee claim by a percentage rather than hour-by-hour for limited success); *and see supra* note 16.

awards Schultz fees of $77,248.00.[21] The court finds that "costs" and expenses in the amount of $14,111.67 should be awarded.

### III. CONCLUSION

This court concludes that Traum's motion for new trial must be denied. The court has reviewed each of Traum's assertions of grounds for a new trial, including insufficiency of evidence, an improper jury instruction, improper interjection of the trial judge into the proceedings, and erroneous evidentiary rulings, and finds them inadequate either separately or in the aggregate to hold that Traum's right to a fair trial was denied. Therefore, Traum's April 15, 1996, motion for new trial is **denied.**

The court concludes further that Schultz is a prevailing party within the meaning of 42 U.S.C. § 1988, and that, because he obtained significantly more than nominal relief, he is a party entitled to an award of some reasonable amount in attorneys' fees. However, upon review of the fee application, the court concludes that the fees claimed should be reduced an aggregate amount of twenty percent for partial success, inadvertent duplication, and time not reasonably expended. However, the court rejects any reduction of the hourly rate claimed by Schultz's counsel. Therefore, the court awards attorneys' fees pursuant to 42 U.S.C. § 1988 to Schultz as a prevailing party in this litigation in the amount of $77,248.00. The court further awards costs and expenses to Schultz in the amount of $14,111.67.

**IT IS SO ORDERED.**

---

**21.** $96,560.00 (fees claimed) − $19,312 (20% re-duction) = $77,248.00 (fees awarded).