**RURAL WATER SYSTEM # 1, an Iowa non-profit corporation, Plaintiff,**

v.

**CITY OF SIOUX CENTER, IOWA, Defendant.**

**No. C 95–4112–MWB.**

United States District Court, N.D. Iowa, Western Division.

March 11, 1999.

Louis T. Rosenberg, Louis T. Rosenberg, P.C., San Antonio, TX, for plaintiff.

Ivan T. Webber, Ahlers, Cooney, Haynie, Smith & Allbee, P.C., Des Moines, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING ATTORNEYS' FEES, EXPENSES, AND COSTS

BENNETT, District Judge.

### TABLE OF CONTENTS

I. BACKGROUND ....................................................1060
II. LEGAL ANALYSIS ...............................................1061
 A. RWS #1's Claim For Fees And Expenses ...........................1061
 1. Fees claimed ..............................................1061
 2. Expenses claimed ..........................................1062
 3. Calculation of a reasonable fee ...........................1062
 a. Reasonable hourly rate .................................1063
 b. Hours reasonably expended .............................1063
 i. Partial success ....................................1064
 ii. Excess hours ......................................1065
 iii. Duplication ......................................1066
 iv. Inadequate record-keeping .........................1066
 c. Summary of fees allowed ...............................1066
 4. Determination of reasonable expenses ......................1067
 5. Award for fees and expenses ...............................1069
 B. The City's Request For Review Of Taxation Of Costs ............1069
III. CONCLUSION ..................................................1069

## I. BACKGROUND

Perhaps it is the nature of "turf wars" that the combatants are willing to do anything to hold their territory without counting the costs. However, when the dust settles, some painful accounting must ultimately be made, and that is certainly true in litigation when the court is asked to award the fees and costs of the winner out of the coffers of the loser. The law requires the court to engage in a post hoc analysis that does not tolerate a "win at any cost" mentality. Instead, the court must ask questions that may never have occurred to the parties in the heat of battle: How big a victory was obtained, and at what price?

This case involved a "turf war" between a non-profit corporation and a municipality over which entity was entitled to distribute water in a disputed territory surrounding the municipality. In the course of ruling on dispositive motions and entering judgment after a three-day bench trial on the merits, the court determined the boundaries of plaintiff RWS # 1's federally-protected service area and what actions of the defendant City constituted curtailments or encroachments upon that service area in violation of 7 U.S.C. § 1926(b). The court thus granted declaratory and injunctive relief on RWS # 1's federal claim, pursu-

ant to 42 U.S.C. § 1983 and the Declaratory Judgment Act , 28 U.S.C. §§ 2201 and 2202, premised on violation of § 1926(b). However, the court ultimately found in favor of the City on RWS # 1's state-law claims of tortious interference with prospective business advantage, conversion of property, and inverse condemnation, and directed entry of judgment that RWS # 1 take nothing on these claims. *See Rural Water Sys. # 1 v. City of Sioux Ctr.*, 29 F.Supp.2d 975 (N.D.Iowa 1998) (trial on the merits); *see also Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483 (N.D.Iowa 1997) (summary judgment).

This matter is now before the court pursuant to RWS # 1's December 8, 1998, motion for attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. RWS # 1's claim is for $321,277.05 in fees for attorneys and paralegals, and $56,239.56 in expenses, for a total of $377,516.61, for what at bottom was a case culminating in only a three-day bench trial. In addition, the court must consider the City's January 28,

1999, request for review, pursuant to FED. R.Civ.P. 54(d), of the taxation of $6,586.20 in costs by the Clerk of Court. After the filing of various briefs and supplements, the court heard oral arguments on the motions on March 3, 1999. Plaintiff RWS # 1 was represented by lead counsel Louis T. Rosenberg of Louis T. Rosenberg, P.C., in San Antonio, Texas.[1] Defendant City of Sioux Center, Iowa, was represented by Ivan T. Webber of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., in Des Moines, Iowa.

## II. LEGAL ANALYSIS

### A. RWS # 1's Claim For Fees And Expenses

#### 1. Fees claimed

The court turns first to RWS # 1's claim for attorneys' fees and expenses. The hours and hourly rates charged by RWS # 1's attorneys and paralegals are summarized in the following tables:[2]

### FEES CLAIMED FOR ATTORNEYS

| Name | Hrs. | Rate | Total Fee Claimed/As Calculated |
|---|---|---|---|
| Louis Rosenberg | 588.2 | $200 | $117,640 |
| Michael Gershon | 121.0 | $115 | $14,596.55/ $13,915 |
| D.C. Money | 1.7 | $115 | $195.50 |
| R. Sease (local counsel) | 498 | $100 | $49,800 |
| **Total Hours Claimed** | 1,208.9 | **Total Fee Requested** | $182,232.05/ $181,550.50 |

### FEES CLAIMED FOR PARALEGALS

| Name | Hrs. | Rate | Total Fee Claimed/As Calculated |
|---|---|---|---|
| Sonia Rosenberg | 935 | $85 | $79,475 |
| Ronald Horne | 614.2 | $85 | $52,209/$52,207 |
| Michael Gershon | 88.9 | $85 | $7,556.50 |
| **Total Hours Claimed** | 1,638.1 | **Total Fee Requested** | $139,240.50/ $139,238.50 |

1. Local counsel for RWS # 1, Randall G. Sease of the Sease Law Firm in Hartley, Iowa, did not participate in the oral arguments.

2. These tables are based on Exhibit 3B to the original fee claim (through Nov. 1998) for Mr. Rosenberg and Mr. Gershon; Exhibit 2B for Mr. Sease; Exhibit 1 to RWS # 1's Reply Brief for Mr. Money; and Exhibit 3B to the original fee claim (through Nov. 1998) for paralegals. Exhibit 1 (Chart 1) to RWS # 1's Reply Brief states slightly different figures, but purports to be for hours expended only through October 30, 1998. Thus, the earlier submissions more nearly coincide with the fee claim made here.

As these tables reflect, the court has found two simple mathematical errors in the calculation of the total fees, one in the calculation of fees for attorney Gershon, and one in the calculation of fees for paralegal Horne. The differences amount to only $683.55, but the court has nonetheless relied upon its own calculation of these fees in determining the appropriate fee award. Based on these tables, the starting point for analysis of RWS # 1's claim is fees for attorneys and paralegals totalling $320,-789.[3]

### 2. Expenses claimed

In its original brief in support of its application for fees and expenses, RWS # 1 listed $102,975.56 in out-of-pocket expenses. These expenses included $38,-411.00 in fees for expert Trotter of McClure Engineering, and another $8,325.00 in fees for expert CPA Murphy. The City protested the inclusion of expert fees as not authorized by 42 U.S.C. § 1988, citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). The City is correct that such fees are not authorized by 42 U.S.C. § 1988, although the total prohibition stated in *Casey* has been modified by subsequent amendment to § 1988 to allow awards for expert fees in "any action or proceeding to enforce a provision of section 1981 or 1981a" of Title 42. 42 U.S.C. § 1988(c); *Jenkins v. Missouri,* 158 F.3d 980, 983 (8th Cir.1998) (explaining the *Casey* decision and the effect of the subsequent amendment). This is not an action that falls within the statutory exception permitting an award of expert fees, and RWS # 1 does not assert otherwise. Some confusion—for both the court and the City—has apparently arisen from a typographical omission in paragraph 6.46 of RWS # 1's original brief. In that paragraph, RWS # 1 acknowledged that expert fees are not allowed by the statute. However, the pertinent sentence is truncated and apparently fails to include the passage in which RWS # 1 articulated precisely what amount of expenses it is actually claiming. RWS # 1 failed ever to state elsewhere the exact amount in expenses it was claiming. Nonetheless, RWS # 1 made further disavowals of any attempt to claim expert fees in its subsequent briefs, stating that the expert fees had been included in its tally of expenses only by way of illustration. RWS # 1 also stated a figure as its total for fees and expenses that it now appears did *not* include fees for experts. Subtracting expert fees from the total of out-of-pocket expenses of $102,-975.56, it appears that RWS # 1 is seeking an award of $56,239.56 for expenses. Thus, RWS # 1's total claim for fees and expenses is for $377,028.56 ($320,789 in fees + $56,239.56 in expenses = $377,-028.56).[4]

### 3. Calculation of a reasonable fee

The parties have acknowledged this court's discussions in prior decisions of the standards by which fees are awarded, including, for example, *Schultz v. Amick,* 955 F.Supp. 1087 (N.D.Iowa 1997), and *Houghton v. Sipco, Inc.,* 828 F.Supp. 631 (N.D.Iowa), *vacated on other grounds,* 38 F.3d 953 (8th Cir.1994). They do not challenge the standards stated in those decisions, but have instead couched their arguments in terms of those standards. Thus, the court will not engage in another detailed recitation of applicable standards. Instead, suffice it to say that "a prevailing plaintiff ' "should ordinarily recover an at-

---

3. This should be compared to RWS # 1's total of $321,472.55 from exhibits offered with the original fee claim, which includes the math error mentioned above, and $321,277.05 stated in RWS # 1's original brief, which apparently fails to include $195.50 in fees for Mr. Money.

4. This amount should be compared to RWS # 1's stated total of $377,268.11 in its original brief. The court has been unable to determine where the discrepancy lies, even taking into account RWS # 1's error in calculating fees.

torney's fee unless special circumstances would render such an award unjust." '" *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1011, p. 4 (1976), in turn quoting *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)); *accord Schultz*, 955 F.Supp. at 1109. Fees are usually calculated according to the "lodestar" method, which multiplies hours reasonably expended by a reasonable hourly rate. *Schultz*, 955 F.Supp. at 1110. Reductions may be made, however, for such things as partial success, duplicative hours or hours not reasonably expended, *see id.* at 1111–12, 1114–16, or for "block billing" or poor record-keeping. *See Houghton*, 828 F.Supp. at 643–44. Judge Pratt, in the Southern District of Iowa, also ably discussed and applied similar bases for reductions of requested fees and expenses in a recent comprehensive and well-written fee decision. *See Dooney v. Norwest Mortgage, Inc.*, No. 4–96–CV–90100, slip op. (S.D.Iowa Feb. 17, 1999).

In this case, the City asserts that reductions should be made on each of these grounds to the requested fees and expenses. Although the City does not contest that RWS # 1 is a "prevailing party" in this litigation, the City contends that RWS # 1's success was at best "partial," pointing to the differences between the relief RWS # 1 requested on its federal claim at various stages in the litigation and the relief RWS # 1 obtained, and RWS # 1's lack of any success on any of its state-law claims. The City also criticizes RWS # 1's documentation of its fees and expenses, arguing that it is almost impossible to determine what hours or expenses pertain to what, and hence it is impossible to determine whether the fees and expenses were reasonably incurred. However, perhaps the crux of the City's challenge to the fee claim is that the hours claimed for both attorneys and paralegals are excessive, and that a much more significant portion of those hours was expended on unsuccessful claims than RWS # 1 ac-

knowledges. The City also claims that the hours are excessive, because, while occasionally arcane, the questions raised primarily involved statutory interpretation and application of case law on established legal principles to the facts of the case, which the City describes as "the quotidian work of lawyers." The City also asserts that a comparison of its own hours expended with those expended by counsel and paralegals for RWS # 1 demonstrates the excessiveness of RWS # 1's claims. Finally, as to costs, the City asserts that not all of the deposition costs taxed were for depositions used at trial. The court will consider these challenges to RWS # 1's claim for fees and expenses in turn.

### a. Reasonable hourly rate

■ The City does not challenge the hourly rates billed by RWS # 1's various attorneys and paralegals, and the court agrees that the hourly rates for attorneys are reasonable, in light of their expertise and experience. Although it is with some qualms, the court accepts that the hourly rate of $85 per hour for paralegals is probably justified and the court will not reduce that rate, although other adjustments will be made elsewhere. Thus, the court finds no ground for reductions in this step of the "lodestar" calculation. *See Schultz*, 955 F.Supp. at 1110 (the "lodestar" method multiplies hours reasonably expended by a reasonable hourly rate).

### b. Hours reasonably expended

However, in light of the City's challenges and the court's own knowledge and expertise, *see Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir.) ("The trial judge should weigh the hours claimed against his [or her] knowledge, experience and expertise of the time required to complete similar activities."), *cert. denied*, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *accord Schultz*, 955 F.Supp. at 1113, the court has determined that reductions on several other grounds

must be made to the fees and expenses RWS #1 has claimed. The same reductions will be made in exactly the same proportion to the fees claimed by each attorney or paralegal, unless otherwise specified. Furthermore, successive reductions will be made from the previous subtotals of "allowed hours," beginning with the reduction for "partial success," rather than applying a total of all percentage reductions to the total fee claim. The court believes this procedure best reflects an appropriate fee, because it eliminates least productive hours first, while awarding the prevailing party to the fullest extent of its success and adequacy of its proof.

■ *i. Partial success.* The parties agree that "[t]he success of the litigant determines not only whether [it] is a 'prevailing party' entitled to any fee award at all, but also is 'crucial' to determining the amount of any fee award." *Schultz,* 955 F.Supp. at 1111–12 (citing *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933). The court concludes that reductions for partial success are appropriate here, not only because RWS #1 obtained no relief on its state-law claims, but because its success on its federal claim was also only "partial." In response to a court order suggesting that RWS #1 supplement its fee claim to reflect its "partial success," RWS #1 suggested that its fee claim be reduced by approximately $28,028.50 in recognition of its lack of success on state-law claims. However, RWS #1 asserts that its state-law claims were otherwise inextricably intertwined with its successful federal claim, making any further reduction inappropriate. *See, e.g., Pinkham v. Camex, Inc.,* 84 F.3d 292, 294 (8th Cir.1996); *Control Data Corp. v. S.C.S.C. Corp.,* 53 F.3d 930, 939 (8th Cir.1995).

■ Notwithstanding RWS #1's assertions, the court is convinced from its own experience with disposition of the claims that a much more significant proportion of time was devoted to state-law claims and state-law issues that were "compartmentalized" from federal issues. An example is the extensive litigation of damages available only on state-law claims, including continued litigation of claims for compensation for customers lost inside the City's 1992 boundaries when the court had determined on summary judgment that RWS #1's *federally* protected service area lay *outside* those boundaries. Furthermore, for the most part, the elements of the state-law claims involved proof of facts distinct from those required to prove RWS #1's federal claim, *see Rural Water Sys. #1 v. City of Sioux Ctr.,* 29 F.Supp.2d 975, 995–1000 (N.D.Iowa 1998) (memorandum opinion and judgment regarding trial on the merits, identifying and considering the elements of the state-law claims), although all of the claims may have arisen from a common nucleus of operative facts. Thus, the court finds that a twenty percent, across-the-board reduction in hours (and thus fees) for attorneys and paralegals is appropriate for lack of success on state-law claims.

■ From the remaining hours (and fees), which were thus, in the court's estimation, devoted to RWS #1's federal claim, a further reduction is also required for partial success on that federal claim. Although RWS #1 broadly characterizes the relief it sought as a determination of the boundaries of its federally-protected service area and injunction of the City from encroachment upon that territory, relief RWS #1 asserts it obtained, the court's experience with the claim again suggests that the relief RWS #1 obtained was considerably narrower than the relief it sought. Specifically, the court concluded that RWS #1 had failed to prove that the City improperly served any new customers within the City's July 1, 1992, boundaries, or that after July 1, 1992, RWS #1 lost any customers it was already serving within the City's boundaries as of July 1, 1992, with the exception of Vande Berg Scales. The court also concluded that the City had only improperly served the Byl Subdivision and the Vander

Vegt property outside of its 1992 boundaries. Although the court did indeed grant the general relief RWS # 1 sought by declaring the boundaries of RWS # 1's federally-protected service area, the determinations of those boundaries and conclusions concerning improper encroachments upon those boundaries differed considerably from the boundaries and the hundreds of customers RWS # 1 claimed had been encroached upon. Thus, the court concludes that a further ten percent, across-the-board reduction in the remaining hours (and thus fees) for attorneys and paralegals is appropriate for partial success on the *federal* claim.

■ *ii. Excess hours.* From the remaining hours, the court determines that further reductions are also required. First, of those remaining hours devoted to the successful portion of the federal claim, the court concludes that some are "excess" or "not reasonably expended." *See Schultz*, 955 F.Supp. at 1114–16 (finding a reduction is appropriate for hours not reasonably expended on a successful claim). Examples of excessive billing are many, and the court will name but a few. In "Chart 2" attached to its Reply Brief, RWS # 1 claims 2.9 hours of attorney time and 35.1 hours in paralegal time for legal research regarding the amended complaint *in addition to* 27.3 hours of attorney time and 97.5 hours of paralegal time devoted to the amended complaint, motion for leave to file an amended complaint, a reply to the City's opposition, a "response," and a response to the City's motion to amend its answer. It is inconceivable to the court that so much time could have been devoted to what appears to be drafting only, when a very substantial (in this court's view, excessive) amount of time had also been devoted to "research." Similarly, it is inconceivable to the court that all of the hours claimed for dispositive motions could have been reasonably expended, when 33.9

hours of attorney time and 80 hours of paralegal time were devoted to "preparation" for oral arguments on summary judgment, copious additional hours were also spent on dispositive motions, responses, replies, and supplementation (72.1 attorney hours and 183.25 paralegal hours), *and* additional hours, separately itemized, were spent on "legal research" for the oral arguments (2.5 attorney hours and 32 paralegal hours). Even recognizing that some of these hours include hours charged at half-time for travel, the totals are excessive. The universe of law applicable to the federal claim in this case was not so large, nor were the issues—although perhaps unusual or arcane—so complicated that the remarkable number of hours claimed can be justified. Moreover, lead counsel for RWS # 1 is a nationally recognized expert in the litigation of § 1926(b) claims and related matters. It is therefore surprising to the court that so many hours were expended, when some economies or efficiencies might have been expected to flow from counsel's expertise. Therefore, the court will make a ten percent cut in the remaining attorneys' hours for time not reasonably expended.[5]

■ The court finds that a still deeper cut for hours not reasonably expended should be made to the hours and fees claimed for compensation of paralegals. The court is very troubled by the total number of hours claimed for paralegals (1,638.1), not least because those hours are on top of what the court views to be an excessive number of hours for counsel (1,208.9). There do not appear to have been many economies achieved by relegating some work to paralegals, when both attorney time and paralegal time on the same project appear to the court to be excessive. Examples of excessive hours for paralegals include, in Exhibit 2 to the Reply Brief, a claim for 80 hours of parale-

5. Indeed, the court believes that this limited reduction is perhaps more generous to RWS # 1 than RWS # 1's extravagant total hours might justify, but the court does not find any suggestion that the hours were not actually expended or billed in good faith. Thus, the court's reduction is tempered by recognition that only hindsight is 20–20.

gal time for "preparation for and conduct of" summary judgment oral arguments *in addition* to 32 hours of paralegal research time, separately itemized, for those oral arguments, which are *over and above* the hours claimed for paralegals for preparation (183.25) and legal research (74.60) for "dispositive motions." Obviously, paralegals did not present any portion of the oral arguments. Furthermore, there is also a substantial number of hours claimed by an attorney for preparation of such arguments, and the legal basis for such arguments should have been fairly well established by the briefs already submitted in support of the motions. The court cannot countenance shifting a fee for approximately two full weeks of paralegal time simply for "preparation" of oral arguments, exclusive of "research" time and other time spent resisting the motion. Comparable concerns are raised by the paralegal hours claimed for preparation and research of post-trial arguments. Therefore, instead of a ten percent cut to paralegal time for excessive hours, which would be comparable to the cut made to attorney time, the court concludes the remaining paralegal time should be cut by thirty percent.

[9] *iii. Duplication.* The court also finds that the remaining hours should be reduced for duplication of effort. *See Schultz,* 955 F.Supp. at 1114–15. As in *Schultz,* the court is *not* invoking a *per se* rule that only one attorney should be compensated for work on a case. *See id.* 955 F.Supp. at 1115. However, the court finds, for example, that the number of hours claimed by local counsel bears a distressing approximation to the number of hours claimed by lead counsel (498 hours as compared to 588.2 hours, or nearly eighty-five percent of lead counsel's time). Furthermore, the court observes again that there do not appear to have been many economies achieved by relegating some work to paralegals when both attorney time and paralegal time on the same project appear to the court to be excessive. In addition to the examples of excessive hours mentioned above, the court finds that there is significant duplication of effort between attorneys and paralegals in the hours claimed for "legal research" for post-trial briefs and arguments. Therefore, the court will make a five percent cut in the remaining hours of attorneys and paralegals for duplication of effort.

■ *iv. Inadequate record-keeping.* Next, the City asserts that inadequacies in RWS # 1's counsel's record-keeping also justify a reduction. The court notes that the monthly statements of the Rosenberg law firm, submitted as Exhibit 3D to the original fee claim, are classic examples of "block billing," because they specify only the daily activities, but do not specifically indicate how much time was spent on each individual task. *See Houghton,* 828 F.Supp. at 643–44. However, RWS # 1's counsel has rectified that inadequacy in Exhibit 5 to the Reply Brief by providing hourly itemizations. Mr. Sease's submission with the original fee claim included an hourly itemization. The City also complains that some of the hours don't always add up and that it is unclear whether hours indicated as "no charge" in client billings have nonetheless been submitted as part of the fee application for fees sought from the defendant. Accepting RWS # 1's counsel's representations that no "no charge" hours were included in the fee submission, and recognizing that none of the discrepancies are so serious as to concern the court with fears that the claim has been intentionally "padded" or "doctored," the court believes that its prior reductions will sufficiently eliminate the impact of any inadvertent math errors. Thus, the court concludes that no reduction is appropriate for poor record-keeping. *Compare id.* at 648 (imposing a fifteen percent reduction for poor record-keeping).

### c. Summary of fees allowed

The reductions in fees the court finds are appropriate in this case are summa-

rized in the following tables. Note that all hours for paralegals are "fungible," that is, all were billed at the same rate. Thus, there is no need to make reductions in paralegal fees person by person. Also, hours have been rounded to the nearest tenth, while dollar amounts have been rounded to the nearest penny.

### ATTORNEYS' FEES CLAIMED AND ALLOWED

| Name | Hrs. | Rate | Total Fee Claimed/As Calculated | Reductions: % / remaining hours | | | | Fee Award: | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Partial Success State/Fed. | | Excess Hours | Dupli- cation | Hrs allowed /Fed/Net | | % Red. |
| Louis Rosenberg | 588.2 | $200 | $117,640 | 20/470.6 | 10/423.5 | 10/381.2 | 5/362.1 | 362.1 | $72,420* | 38.4 |
| Michael Gershon | 121.0 | $115 | $14,596.55/ $13,915 | 20/96.8 | 10/87.1 | 10/78.4 | 5/74.5 | 74.5 | $8,567.50 | 38.4 |
| D.C. Money | 1.7 | $115 | $195.50 | 20/1.4 | 10/1.3 | 10/1.3 | 5/1.1 | 1.1 | $126.50 | 35.3* |
| R. Sease (local counsel) | 498 | $100 | $49,800 | 20/398.4 | 10/358.6 | 10/322.7 | 5/306.6 | 306.6 | $30,660 | 38.4 |
| Total Hours Claimed | 1,208.9 | Total Fee Req. | $182,232.05/ $181,550.50 | | | Total Fee Award: Hrs/ Fees/% Red. | | 744.3 | $111,774 | 38.4 |

\* The smaller net percentage reduction for Mr. Money results from rounding of the reductions in hours remaining with only a small number of hours originally claimed.

### PARALEGALS' FEES CLAIMED AND ALLOWED

| Name | Hrs. | Rate | Total Fee Claimed/As Calculated | Reductions: % / remaining | | | | Fee Award | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Partial Success State/Fed. | | Excess Hours | Dupli- cation | Hrs allowed/Fee/Net | | % Red. |
| All Paralegals | 1,638.1 | $85 | $139,240.50/ $139,238.50 | 20/ 1,310.5 | 10/ 1179.5 | 30/ 825.7 | 5/ 784.4 | 784.4 | $66,674 | 52.1 |

The total amount awarded for attorneys' and paralegals' fees to the prevailing party in this litigation is therefore $178,448 ($111,774 in attorneys' fees + $66,674 in paralegals' fees = $178,448). This award results in a net reduction of 44.37% from the claimed fees of $320,789. Recognizing that the touchstone is "reasonableness," the court finds this fee is appropriate, even in light of the zealous and professional representation RWS # 1 received, because, after all, this litigation culminated in only a three-day bench trial.

### 4. Determination of reasonable expenses

 The court turns next to RWS # 1's claim for expenses in addition to the costs assessed by the Clerk of Court. RWS # 1 claims $56,239.56 in such expenses (exclusive of any expert fees) as part of its award for reasonable attorneys' fees. *See Schultz*, 955 F.Supp. at 1116 (" '[R]easonable out-of-pocket expenses of the kind normally charged to clients by attorneys ... should [be] included as part of the reasonable attorney's fees awarded' under 42 U.S.C. § 1988," quoting *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir.1996)). However, the court concludes, first, that reductions to the expenses claimed should be made for "partial success" on state and federal claims, just as such reductions were made to the attorneys' and paralegals' fees. *Schultz*, 955 F.Supp. at 1111–12 ("[t]he success of the litigant ... is 'crucial' to determining the amount of any fee award," citing *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933). Therefore, reducing the expenses by twenty percent for lack of success on state claims yields allowable expenses of $44,991.65. Reducing those expenses by a further ten percent for partial success on the federal

claim yields allowable expenses of $40,-492.48.

The court finds that a further reduction to the claimed expenses is required, because RWS # 1 failed to prove that all of these expenses were reasonably incurred and because the expenses are not properly documented. *Compare Schultz,* 955 F.Supp. at 1116 (making a reduction, albeit a limited one, for expenses not reasonably incurred); *Houghton,* 828 F.Supp. at 643–48 (reducing fees for poor record-keeping). Apart from some copies of receipts for hotel rooms and meals, *see* Exhibit 6A ("Invoices of Professionals"), and itemized expenses for experts, *see* Exhibit 4B & 4C (cost documents for Mr. Murphy); Exhibit 6B ("Out of Pocket Costs Docs."), the latter of which are expenses RWS # 1 does not claim should be reimbursed, RWS # 1 has provided no documentation of any kind in support of the expenses its counsel has claimed.

For example, in "Chart 4" attached to RWS # 1's Reply Brief, large amounts are claimed for airfare for December 1996 ($1,968), February 1997 ($1,354), and most notably April 1998 ($4,031), as well as for other months, but there is no indication of how many individuals were flying from where to where for what purpose, and no receipts or credit card statements showing such charges are provided. The court is well aware that its own schedule required the changing of some reservations and the booking of some flights on short notice. Nonetheless, without an indication, at a minimum, of how many people traveled where, and for what purpose, it is impossible for the court to assess whether these costs are reasonable or reasonably related to this litigation.

Similar deficiencies are apparent in the claims for rental car expenses, for example, in February 1997 ($775.20) and May 1998 ($472.91). The claims for car rental do not indicate how many vehicles were rented, for what purpose, for how long, or to carry how many people, and again, no receipts or credit card statements showing such charges have been provided. Indeed, there is no documentation whatsoever in support of the claims for car rental expenses

Just as troubling to the court are the remarkable expenses claimed for "copies," such as may be found itemized for October 1996 ($794.80 for "copy & postage" and $1,045.77 for "outside copy charges"), and February 1997 ($283.67 for "copy charges" and $1,917.33 for "outside copy charges"), to name a few, and "Federal Express," such as may be found itemized for December 1996 ($406.59), February 1997 ($438.84), April 1998 ($455.56), and May 1998 ($617.95). These expenses are not supported by invoices or other documentation indicating what was being copied or sent for what purpose, making it impossible for the court to determine whether the expenses are reasonable or reasonably related to this litigation.

These are some of the more troubling examples, but the lack of explanation or documentation of expenses, making it difficult or impossible for the court to determine whether expenses are reasonable or reasonably incurred, runs throughout RWS # 1's application for expenses. When queried about these expenses at oral arguments, counsel for RWS # 1 was unable to give a satisfactory explanation. Although there may well be a reasonable and satisfactory explanation for these expenses, the court has not heard it.[6]

---

**6.** That is, the court heard no *timely* explanation. At the eleventh hour on March 10, 1999, after submission and supplementation of the fee application, filing of all briefs, and presentation of oral arguments, while this decision was undergoing final editing, the court received RWS # 1's "Motion for Leave to File Post–Hearing Cost Clarification" in which

RWS # 1 attempts to provide belated documentation of some of its travel and copy costs. RWS # 1's motion for leave to file the clarification, however, will be denied, because it is untimely, and at least as importantly, because RWS # 1 has previously had ample opportunity to supplement and clarify its fee application. To permit such a belated "clarification"

Therefore, the court will reduce the remaining allowable expenses by fifteen percent, from $40,492.48 to $34,418.61, for poor record-keeping and failure to carry the burden of proof that the expenses were both reasonable and reasonably incurred in pursuit of this litigation. The expenses allowed thus result in a net 38.8% reduction in the expenses claimed.

### 5. Award for fees and expenses

The total awarded to RWS # 1 for attorneys fees and expenses pursuant to its application of December 8, 1998, is therefore $212,866.61 ($178,448 in allowed fees + $34,418.61 in allowed expenses = $212,-866.61). This compares with the total claim for fees and expenses of $377,516.61, for a net 43.6% reduction.

### B. The City's Request For Review Of Taxation Of Costs

Finally, the court will briefly address the City's motion for review of the taxation of costs. In an order consolidating oral arguments on the City's motion with the arguments on RWS # 1's fee application, the court advised the City to be prepared to argue why it had not waived any objection to the costs as taxed by the Clerk by failing to resist RWS # 1's bill of costs as provided in N.D.IA.L.R. 54.1(a)(1)(C). Although the City at first maintained that the local rule exceeded the scope of FED. R.CIV.P. 54(d), the City conceded at oral argument that it had found no authority limiting the court's discretion to implement a local rule concerning the procedures for assessing costs. Therefore, the court concludes that the City's objections to the costs as assessed by the Clerk would be waived.

would have the unacceptable effect of turning this fee litigation into precisely the sort of "Kafkaesque nightmare" or "second major litigation" over fees—involving endless submissions, revised submissions, and counter submissions—that courts abhor. *See Schultz,* · 955 F.Supp. at 1112 (citing *Commissioner, Immigration and Naturalization Serv. v. Jean,*

Nonetheless, turning very briefly to the merits of the City's challenge to the taxation of costs, the essence of the City's objections was that not all of the costs assessed by the Clerk for depositions were for depositions used at trial. In *Chester v. Northwest Iowa Youth Emergency Ctr.,* 158 F.R.D. 626 (N.D.Iowa 1994), this court stated the rule to be that "[g]enerally, the expenses of taking or obtaining copies of depositions which are not used at trial or in support of dispositive motions are not taxable as costs, unless they were reasonably necessary to the case and not purely for investigative purposes." *Chester,* 158 F.R.D. at 632. The City does not challenge that rule. Here, the court concludes that all of the costs for depositions assessed by the Clerk were for depositions reasonably necessary to the case and not purely for investigative purposes. *Compare id.* (concluding that none of the depositions or copy costs in question were reasonably necessary to disposition of the question of federal jurisdiction upon which dismissal had turned).

However, the City has also pointed out what appears to be a duplication in charges for copies of the same depositions, $137.80 for copies of the depositions of Michael Trotter and Kenneth Murphy, invoiced to Mr. Sease on April 16, 1998, and $144.80 for copies of the same depositions invoiced to Mr. Rosenberg on April 16, 1998. Counsel for RWS # 1 did not demonstrate these costs were for different things. Therefore, the court will modify the taxation of costs by the Clerk by deducting $137.80 for the duplication.

### III. CONCLUSION

Upon consideration of the submissions and arguments of the parties, the court concludes as follows:

496 U.S. 154, 163, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)). In contrast, the court has allowed the belated submission of supplemental authority, because it was the court's obligation to understand the proper legal context for a fee application. However, the supplemental authority offered here changed nothing about that legal context.

1. RWS #1's December 8, 1998, application for attorneys' fees and costs is **granted** in the amount of **$212,866.61.**

2. The City's January 28, 1999, motion under FED.R.CIV.P. 54(d) regarding taxation of costs is **granted** to the extent that the court directs the Clerk of Court to deduct $137.80 for duplication of costs for copies of depositions. **Costs are therefore taxed in the amount of $6,448.40.**

3. RWS #1's March 10, 1999, Motion for Leave to File Post–Hearing Cost Clarification is **denied.**

**IT IS SO ORDERED.**